**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | **Chapter 11** |
| | § | |
| **EVERSTREAM SOLUTIONS LLC,** *et al.*, | § | **Case No. 25-90144 (CML)** |
| | § | |
| | § | **(Jointly Administered)** |
| Debtors.[1] | § | |

**THIRD AMENDED JOINT CHAPTER 11 PLAN OF
EVERSTREAM SOLUTIONS LLC AND ITS AFFILIATED DEBTORS**

| | |
|---|---|
| **WEIL, GOTSHAL & MANGES LLP** | **WEIL, GOTSHAL & MANGES LLP** |
| Gabriel A. Morgan (24125891) | Matthew S. Barr (admitted *pro hac vice*) |
| Clifford W. Carlson (24090024) | Andriana Georgallas (admitted *pro hac vice*) |
| 700 Louisiana Street, Suite 3700 | Alexander P. Cohen (24109739) |
| Houston, Texas 77002 | 767 Fifth Avenue |
| Telephone:  (713) 546-5000 | New York, New York 10153 |
| Facsimile:  (713) 224-9511 | Telephone:  (212) 310-8000 |
| | Facsimile:  (212) 310-8007 |

*Attorneys for Debtors
and Debtors in Possession*

Dated:     November 17, 2025
               Houston, Texas

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Midwest Fiber Holdings LP (3804); Midwest Fiber Acquisition Topco LLC (N/A); Midwest Fiber Acquisition Midco1 LLC (6061); Midwest Fiber Acquisition LLC (N/A); Everstream Solutions LLC (2361); Everstream Networks LLC (4542); Everstream GLC Holding Company LLC (4493); American Fiber Comm L.L.C. (2389); HRS Internet, LLC (5042); Lynx Network Group, Inc. (6261); 15955 State Street LLC (2731); Rocket Fiber LLC (7722); Lynx Fiber One, LLC (7151); and Lynx Fiber Two, LLC (3416).  The Debtors' mailing address is 1228 Euclid Ave. Suite 250, Cleveland, OH 44115.

# TABLE OF CONTENTS

**Page**

Article I.        DEFINITIONS AND INTERPRETATION.

    A.    Definitions ................................................................................................ 1
    B.    Interpretation; Application of Definitions; Rules of Construction ............................ 16
    C.    Reference to Monetary Figures ................................................................. 16
    D.    Controlling Document ............................................................................ 16

Article II.       ADMINISTRATIVE EXPENSE CLAIMS, FEE CLAIMS, AND PRIORITY TAX CLAIMS.

    2.1    Treatment of DIP Claims ......................................................................... 17
    2.2    Treatment of Administrative Expense Claims ........................................... 17
    2.3    Treatment of Fee Claims ......................................................................... 18
    2.4    Treatment of Priority Tax Claims ............................................................. 19
    2.5    Restructuring Expenses ........................................................................... 19

Article III.      CLASSIFICATION OF CLAIMS AND INTERESTS.

    3.1    Classification in General .......................................................................... 19
    3.2    Formation of Debtor Groups for Convenience Only ................................. 19
    3.3    Summary of Classification of Claims and Interests .................................. 20
    3.4    Special Provision Governing Unimpaired Claims .................................... 20
    3.5    Separate Classification of Other Secured Claims ..................................... 20
    3.6    Elimination of Vacant Classes ................................................................. 20
    3.7    Voting Classes; Presumed Acceptance by Non-Voting Classes ............... 21
    3.8    Voting; Presumptions; Solicitation .......................................................... 21
    3.9    Cramdown ............................................................................................... 21
    3.10   No Waiver ............................................................................................... 21

Article IV.       TREATMENT OF CLAIMS AND INTERESTS.

    4.1    Class 1:  Other Secured Claims ............................................................... 21
    4.2    Class 2:  Other Priority Claims ............................................................... 22
    4.3    Class 3:  OpCo Lender Secured Claims ................................................... 22
    4.4    Class 4:  OpCo General Unsecured Claims ............................................. 23
    4.5    Class 5:  HoldCo Lender Secured Claims ............................................... 23
    4.6    Class 6:  HoldCo General Unsecured Claims .......................................... 23
    4.7    Class 7:  Intercompany Claims ............................................................... 24
    4.8    Class 8:  Subordinated Claims ............................................................... 24
    4.9    Class 9:  HoldCo Equity Interests ........................................................... 24
    4.10   Class 10:  Intercompany Interests .......................................................... 25

Article V.        MEANS FOR IMPLEMENTATION.

    5.1    No Substantive Consolidation ................................................................. 25
    5.2    Compromise and Settlement of Claims, Interests, and Controversies ....... 25
    5.3    Sources of Consideration for Plan Distributions ..................................... 28
    5.4    Wind Down and Dissolution of the Debtors ........................................... 28
    5.5    Effectuating Documents; Further Transactions ........................................ 32
    5.6    Cancellation of Existing Securities and Agreements ............................... 33

| | 5.7 | Letters of Credit | 33 |
| | 5.8 | Cancellation of Liens | 34 |
| | 5.9 | Intercompany Interests; Corporate Reorganization | 34 |
| | 5.10 | Preservation of Causes of Action | 34 |
| | 5.11 | Subordination Agreements | 35 |
| | 5.12 | Nonconsensual Confirmation | 35 |
| | 5.13 | Closing of Chapter 11 Cases | 35 |
| | 5.14 | Notice of Effective Date | 35 |

| Article VI. | | DISTRIBUTIONS. | |
| | 6.1 | Distributions Generally | 35 |
| | 6.2 | No Postpetition Interest on Claims | 35 |
| | 6.3 | Date of Distributions | 35 |
| | 6.4 | Distribution Record Date | 36 |
| | 6.5 | Distributions after Effective Date | 36 |
| | 6.6 | Disbursing Agent | 36 |
| | 6.7 | Rights and Powers of Disbursing Agent | 37 |
| | 6.8 | Delivery of Distributions | 37 |
| | 6.9 | Unclaimed Property | 38 |
| | 6.10 | Satisfaction of Claims | 38 |
| | 6.11 | Manner of Payment under Plan | 38 |
| | 6.12 | Fractional Shares and De Minimis Cash Distributions | 38 |
| | 6.13 | No Distribution in Excess of Amount of Allowed Claim | 38 |
| | 6.14 | Allocation of Distributions Between Principal and Interest | 38 |
| | 6.15 | Setoffs and Recoupments | 39 |
| | 6.16 | Withholding and Reporting Requirements | 39 |

| Article VII. | | PROCEDURES FOR DISPUTED CLAIMS. | |
| | 7.1 | Allowance of Claims | 39 |
| | 7.2 | Objections to Claims | 40 |
| | 7.3 | Estimation of Claims | 40 |
| | 7.4 | Adjustment to Claims Register Without Objection | 40 |
| | 7.5 | Time to File Objections to Claims | 40 |
| | 7.6 | Disallowance of Claims | 41 |
| | 7.7 | Amendments to Claims | 41 |
| | 7.8 | No Distributions Pending Allowance | 41 |
| | 7.9 | Distributions After Allowance | 41 |
| | 7.10 | Claims Resolution Procedures Cumulative | 41 |

| Article VIII. | | EXECUTORY CONTRACTS AND UNEXPIRED LEASES. | |
| | 8.1 | General Treatment | 41 |
| | 8.2 | Determination of Cure Amounts and Deemed Consent | 42 |
| | 8.3 | Payments Related to Assumption of Contracts and Leases | 43 |
| | 8.4 | Rejection Damages Claims | 44 |
| | 8.5 | Survival of Certain of the Debtors' Indemnification Obligations | 44 |
| | 8.6 | Insurance Policies | 45 |
| | 8.7 | Modifications, Amendments, Supplements, Restatements, or Other Agreements | 45 |
| | 8.8 | Reservation of Rights | 45 |

8.9     Purchaser Assumed Claims; WholeCo Sale Order; Assumption and
Assignment Procedures ................................................................................................ 46

Article IX.       CONDITIONS PRECEDENT TO OCCURRENCE OF EFFECTIVE DATE.

9.1     Conditions Precedent to Effective Date ....................................................... 46
9.2     Waiver of Conditions Precedent................................................................... 47
9.3     Effect of Failure of a Condition ................................................................... 47
9.4     Substantial Consummation ........................................................................... 47

Article X.       EFFECT OF CONFIRMATION.

10.1     Binding Effect ............................................................................................... 47
10.2     Vesting of Assets........................................................................................... 47
10.3     Pre-Confirmation Injunctions and Stays ...................................................... 48
10.4     Injunction Against Interference With Plan.................................................... 48
10.5     Plan Injunction .............................................................................................. 48
10.6     Releases......................................................................................................... 50
10.7     Exculpation.................................................................................................... 51
10.8     Injunction Related to Releases and Exculpation .......................................... 52
10.9     Subordinated Claims ..................................................................................... 52
10.10   Retention of Causes of Action and Reservation of Rights ........................... 52
10.11   Ipso Facto and Similar Provisions Ineffective............................................. 52

Article XI.      RETENTION OF JURISDICTION.

11.1     Retention of Jurisdiction .............................................................................. 53

Article XII.     MISCELLANEOUS PROVISIONS.

12.1     Statutory Fees................................................................................................ 54
12.2     Exemption from Certain Transfer Taxes ...................................................... 55
12.3     Request for Expedited Determination of Taxes ........................................... 55
12.4     Dates of Actions to Implement Plan............................................................. 55
12.5     Amendments.................................................................................................. 55
12.6     Revocation or Withdrawal of Plan ............................................................... 56
12.7     Severability.................................................................................................... 56
12.8     Governing Law.............................................................................................. 56
12.9     Immediate Binding Effect ............................................................................. 56
12.10   Successors and Assigns ................................................................................ 57
12.11   Entire Agreement .......................................................................................... 57
12.12   Computing Time ........................................................................................... 57
12.13   Exhibits to Plan ............................................................................................ 57
12.14   Notices.......................................................................................................... 57
12.15   Reservation of Rights ................................................................................... 60
12.16   Rights of the Successful Bidder Under the WholeCo Sale Order ................ 60
12.17   Waiver or Estoppel....................................................................................... 60
12.18   Dissolution of Creditors' Committee ........................................................... 60

Everstream Solutions LLC and its Debtor affiliates propose this *Third Amended Joint Chapter 11 Plan of Everstream Solutions LLC and Its Affiliated Debtors*. Capitalized terms used but not otherwise defined shall have the respective meanings ascribed to such terms in Article I.A of the Plan. Holders of Claims and Interests may refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information, as well as a summary and description of the Plan. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code. The Plan shall apply as a separate Plan for each of the Debtors, and the classification of Claims and Interests set forth herein shall apply separately to each of the Debtors.

ALL HOLDERS OF CLAIMS AND INTERESTS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## ARTICLE I.  DEFINITIONS AND INTERPRETATION.

### A.  Definitions.

The following terms shall have the respective meanings specified below:

**1.1**  **"Adequate Protection Claim"** means, subject to the Carve-Out (as defined in the DIP Order), any right to payment constituting a superpriority Administrative Expense Claim against each of the Debtors on a joint and several basis with priority over any and all other Administrative Expense Claims against the Debtors now existing or hereafter arising in the Chapter 11 Cases granted pursuant to the DIP Order.

**1.2**  **"Administrative Expense Claim"** means any Claim, other than a DIP Claim, for costs and expenses of administration of the Chapter 11 Cases pursuant to sections 327, 328, 330, 365, 503(b), 507(a)(2), or 507(b) of the Bankruptcy Code, including (i) the actual and necessary costs and expenses incurred on or after the Petition Date and through the Effective Date of preserving the Estates and operating the Debtors' businesses, (ii) Adequate Protection Claims, (iii) Fee Claims, and (iv) Restructuring Expenses.

**1.3**  **"Administrative Expense Claims Bar Date"** means 21 days from the Effective Date, except as otherwise specifically set forth in this Plan or a Final Order.

**1.4**  **"Affiliate"** means any "affiliate" as defined in section 101(2) of the Bankruptcy Code.

**1.5**  **"Agents"** means, collectively, the OpCo Agent and the HoldCo Agent.

**1.6**  **"Allowed"** means, with respect to any Claim, except as otherwise provided herein: (i) a Claim that is evidenced by a Proof of Claim filed by the Claims Bar Date in accordance with the Claims Bar Date Order (or for which Claim under the Plan, the Bankruptcy Code, or a Final Order of the Bankruptcy Court a Proof of Claim is not or shall not be required to be filed); (ii) a Claim that is listed in the Schedules, if any, as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim, as applicable, has been timely filed; (iii) a Claim Allowed pursuant to the Plan or a Final Order; or (iv) a Claim that is estimated under section 502(c) of the Bankruptcy Code and Allowed in such estimated amount pursuant to an order of the Bankruptcy Court for purposes of distribution; *provided* that with respect to a Claim described in clauses (i) and (ii) above, such Claim shall be considered Allowed only if and to the extent that with respect to such Claim no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or, if such an objection is so interposed and the Claim, as applicable, shall have been Allowed by a Final Order; *provided, further*, that unless expressly waived by the Plan, the Allowed amount

of a Claim shall be subject to and shall not exceed the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502 or 503 of the Bankruptcy Code, to the extent applicable; *provided, further*, that notwithstanding the foregoing, the Debtors will retain all claims and defenses with respect to Allowed Claims that are reinstated or otherwise unimpaired pursuant to this Plan other than as expressly set forth in Article X of this Plan.

1.7 ***"Asset"*** means all of the rights, title, and interests of a Debtor in and to property of whatever type or nature (including real, personal, mixed, intellectual, tangible, and intangible property).

1.8 ***"Assumption Dispute"*** means an unresolved objection regarding assumption, Cure Amount, "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code), or other issues relating to assumption of an executory contract or unexpired lease.

1.9 ***"Avoidance Actions"*** means any and all actual or potential Claims and Causes of Action to avoid a transfer of property or an obligation incurred by the Debtors arising under chapter 5 of the Bankruptcy Code, including sections 502(d), 542, 544, 545, 547, 548, 549, 550, 551, 552, and 553(b) of the Bankruptcy Code, and applicable non-bankruptcy law.

1.10 ***"Back-Up Bidder"*** means Metro Everstream BidCo, LLC.

1.11 ***"Ballot"*** means a ballot providing for the acceptance or rejection of this Plan and to make an election with respect to the releases by holders of Claims and Interests provided by Section 10.6 of this Plan.

1.12 ***"Bankruptcy Code"*** means title 11 of the United States Code, as amended from time to time, as applicable to these Chapter 11 Cases.

1.13 ***"Bankruptcy Court"*** means the United States Bankruptcy Court for the Southern District of Texas having jurisdiction over the Chapter 11 Cases and, to the extent of any reference made under section 157 of title 28 of the United States Code is withdrawn or the Bankruptcy Court is determined not to have authority to enter a Final Order on an issue, the District Court having jurisdiction over the Chapter 11 Cases under section 151 of title 28 of the United States Code.

1.14 ***"Bankruptcy Rules"*** means the Federal Rules of Bankruptcy Procedure as promulgated by the Supreme Court of the United States under section 2075 of title 28 of the United States Code, as amended from time to time, applicable to the Chapter 11 Cases, chambers rules, and any local rules of the Bankruptcy Court, in each case, as amended from time to time and applicable to the Chapter 11 Cases.

1.15 ***"Bidding Procedures"*** means the procedures governing the WholeCo Sale Process, as approved by the Bankruptcy Court and as may be amended, supplemented, or otherwise modified from time to time in accordance with their terms.

1.16 ***"Bidding Procedures Motion"*** means the motion seeking entry of the Bidding Procedures Order (Docket No. 57).

1.17 ***"Bidding Procedures Order"*** means the order of the Bankruptcy Court granting the Bidding Procedures Motion and approving the Bidding Procedures (Docket No. 216).

1.18 ***"Bluebird"*** means Bluebird MidWest, LLC.

**1.19** **"Business Day"** means any day other than a Saturday, a Sunday, or any other day on which banking institutions in New York, New York are authorized or required by law or executive order to close.

**1.20** **"Cash"** means legal tender of the United States of America.

**1.21** **"Cause of Action"** means any action, claim, cross-claim, third-party claim, cause of action, controversy, dispute, demand, right, Lien, indemnity, contribution, guaranty, suit, obligation, liability, loss, debt, fee or expense, damage, interest, judgment, cost, account, defense, remedy, offset, power, privilege, proceeding, license, and franchise of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively (including any alter ego theories), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law (including under any state or federal securities laws). For the avoidance of doubt, Cause of Action also includes (i) any right of setoff, counterclaim, or recoupment, and any claim for breach of contract or for breach of duties imposed by law or in equity, (ii) the right to object to Claims or Interests, (iii) any claim pursuant to section 362 of the Bankruptcy Code, (iv) any claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code, and (v) any Avoidance Actions.

**1.22** **"Chapter 11 Case"** means, with respect to a Debtor, such Debtor's case under chapter 11 of the Bankruptcy Code commenced on the Petition Date in the Bankruptcy Court, jointly administered with all other Debtors' cases under chapter 11 of the Bankruptcy Code.

**1.23** **"Claim"** means a "claim," as defined in section 101(5) of the Bankruptcy Code, against any Debtor.

**1.24** **"Claims and Noticing Agent"** means Stretto, Inc., the claims, noticing, and solicitation agent retained by the Debtors.

**1.25** **"Claims Bar Date"** means the dates by which Proofs of Claim must be filed with respect to Claims (other than Administrative Expense Claims and DIP Claims) against the Debtors, as ordered by the Bankruptcy Court pursuant to the Claims Bar Date Order or other applicable order or pursuant to the Plan.

**1.26** **"Claims Bar Date Order"** means an order of the Bankruptcy Court establishing the Claims Bar Date.

**1.27** **"Claims Ombudsman"** has the meaning set forth in Section 5.2(b)(xii) of the Plan.

**1.28** **"Claims Ombudsman Agreement"** means the agreement setting forth, among other things, the terms of compensation and authority of the Claims Ombudsman, which shall be in form and substance reasonably acceptable to the Debtors, the Requisite Prepetition Lenders, and the Creditors' Committee.

**1.29** **"Claims Register"** means the official register of Claims maintained by the Claims and Noticing Agent in the Chapter 11 Cases; *provided* that with respect to DIP Claims, OpCo Lender Claims, and HoldCo Lender Claims, the Claims Register shall be the lender registers maintained by the DIP Agent, OpCo Agent, and HoldCo Agent, respectively.

**1.30** **"Class"** means any group of Claims or Interests classified under this Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

**1.31** **"Confirmation Date"** means the date on which the Bankruptcy Court enters the Confirmation Order.

**1.32** **"Confirmation Hearing"** means the hearing held by the Bankruptcy Court regarding confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

**1.33** **"Confirmation Order"** means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

**1.34** **"Counterparty Reserve"** means an amount of cash to be included in the Wind Down Budget that is equal to the Debtors' good faith estimate of all expected undisputed obligations arising under any executory contract or unexpired lease that has not been rejected or assumed and assigned to a third party. The Debtors shall notify the Creditors' Committee of the foregoing amount to be included in the Counterparty Reserve no less than 10 days prior to the Effective Date.

**1.35** **"Covered Persons"** means all current and former directors, officers, and employees of the Debtors and any other Persons employed or engaged by the Debtors as of the date immediately prior to the Effective Date, in each case that are entitled to indemnification from the Debtors under the applicable agreements or documents, and any other Person that is agreed in writing between the Requisite Prepetition Lenders and the Debtors; *provided* that Covered Persons shall not include any party that is not a Released Party under this Plan.

**1.36** **"Credit Card Program Bank Account"** means the bank account (ending in 0493) owned by HoldCo at PNC in connection with the Debtors' corporate credit card program with PNC.

**1.37** **"Credit Card Program Obligations"** means the obligations of the Debtors arising from the Debtors' corporate credit card program with PNC.

**1.38** **"Creditors' Committee"** means the Official Committee of Unsecured Creditors appointed by the U.S. Trustee in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code as it may be constituted from time to time (Docket No. 136).

**1.39** **"Creditors' Committee Advisors"** means McDermott Will & Schulte LLP and M3 Advisory Partners, LP, as counsel and financial advisor, respectively, to the Creditors' Committee.

**1.40** **"Creditors' Committee Settlement"** has the meaning set forth in Section 5.2(b) of this Plan.

**1.41** **"Creditors' Committee Settlement Amount"** means Sale Proceeds in the amount of $2,000,000 (which shall be held by the Debtors or Wind Down Co, as applicable, in trust for the benefit of holders of OpCo General Unsecured Claims).

**1.42** **"Crown Castle"** has the meaning set forth in Section 5.2(b)(xi) of this Plan.

**1.43** **"Cure Amount"** means the payment of Cash or the distribution of other property (as the Debtors or the Plan Administrator, as applicable, and the counterparty to an executory contract or unexpired lease of the Debtors may agree, with the consent of the Requisite Prepetition Lenders, or the Bankruptcy Court may order, and solely with respect to any cure payments to be made after the Effective Date by Wind Down Co, subject to the Wind Down Budget) necessary to (a) cure a monetary default by the Debtors in accordance with the terms of an executory contract or unexpired lease and (b) permit the Debtors to assume such executory contract or unexpired lease under section 365(a) of the Bankruptcy Code.

**1.44** **"Cure Notice"** means the notice of proposed Cure Amount to be paid in connection with an executory contract or unexpired lease of the Debtors that may be assumed pursuant to section 365 of the Bankruptcy Code, which shall include (i) procedures for objecting to proposed assumptions of executory contracts and unexpired leases, (ii) any Cure Amount to be paid in connection therewith, and (iii) procedures for resolution by the Bankruptcy Court of any related disputes.

**1.45** **"D&O Policy"** means any insurance policy, including tail insurance policies, for directors', managers', members', trustees', and officers' liability maintained by the Debtors.

**1.46** **"Debtor"** means each of the Debtors, in its respective individual capacity as debtor and debtor in possession in the Chapter 11 Cases.

**1.47** **"Debtor in Possession"** means, with respect to a Debtor, that Debtor in its capacity as a debtor in possession pursuant to sections 1101, 1107(a), and 1108 of the Bankruptcy Code.

**1.48** **"Debtors"** means, collectively, (i) Midwest Fiber Holdings LP, (ii) Midwest Fiber Acquisition Topco LLC, (iii) Midwest Fiber Acquisition Midco1 LLC, (iv) Midwest Fiber Acquisition LLC, (v) Everstream Solutions LLC, (vi) Everstream Networks LLC, (vii) Everstream GLC Holding Company LLC), (viii) American Fiber Comm L.L.C., (ix) HRS Internet, LLC, (x) Lynx Network Group, Inc., (xi) 15955 State Street LLC, (xii) Rocket Fiber LLC, (xiii) Lynx Fiber One, LLC, and (xiv) Lynx Fiber Two, LLC, the debtors and debtors in possession in the Chapter 11 Cases.

**1.49** **"Definitive Documents"** means (i) the Plan, (ii) the Plan Supplement and the documents contained therein, (iii) the Bidding Procedures Motion, (iv) the Bidding Procedures Order, (v) the Disclosure Statement, (vi) the Disclosure Statement Order and the Confirmation Order, (vii) the DIP Motion and the DIP Order, (viii) the DIP Credit Agreement, (ix) the WholeCo Sale Documents, and (x) any other material documents, instruments, schedules, or exhibits annexed to or described or contemplated in each of the foregoing, with each Definitive Document described in (i) through (x) of this definition being in form and substance acceptable to the Requisite Prepetition Lenders.

**1.50** **"DIP Agent"** means Société Générale, in its capacity as administrative agent and collateral agent under the DIP Credit Agreement, and any successor and permitted assign.

**1.51** **"DIP Claims"** means Claims in respect of the DIP Obligations (as defined in the DIP Order), including the Roll-Up DIP Loans Claims and all interest, premiums, fees, expenses, and other amounts owing under the DIP Loan Documents and in accordance therewith, held by, or otherwise owing to, any or all of the DIP Agent and the DIP Lenders.

**1.52** **"DIP Credit Agreement"** has the meaning set forth in the DIP Order.

**1.53** **"DIP Loan Documents"** has the meaning set forth in the DIP Order.

**1.54** **"DIP Facility"** has the meaning set forth in the DIP Order.

**1.55** **"DIP Lenders"** has the meaning set forth in the DIP Order.

**1.56** **"DIP Loans"** means, collectively, the Roll-Up DIP Loans (as defined in the DIP Order) and the New Money DIP Loans (as defined in the DIP Order).

**1.57** **"DIP Motion"** means the motion seeking approval of the DIP Facility and the Debtors' use of cash collateral and entry of the DIP Orders (Docket No. 46).

**1.58** **"DIP Order"** means, together, the Interim DIP Order and the Final DIP Order, as may be amended, supplemented, or otherwise modified from time to time in accordance with the terms thereof.

**1.59** **"Disbursing Agent"** means the Plan Administrator or any Person engaged by the Debtors, Wind Down Co, or the Plan Administrator, with the consent of the Requisite Prepetition Lenders, as applicable, to assist with disbursements under this Plan.

**1.60** **"Disclosure Statement"** means the disclosure statement for this Plan, as amended, supplemented, or otherwise modified from time to time, which is prepared and distributed in accordance with sections 1125, 1126(b), or 1145 of the Bankruptcy Code, Bankruptcy Rules 3016 and 3018, or other applicable law, and all exhibits, schedules, supplements, modifications, amendments, annexes, and attachments to such disclosure statement.

**1.61** **"Disclosure Statement Order"** means the order of the Bankruptcy Court approving the Disclosure Statement and the Solicitation Procedures.

**1.62** **"Disputed"** means, with respect to a Claim, (i) any Claim, which Claim is disputed under Section 7.1 of this Plan or as to which the Debtors have interposed and not withdrawn an objection or request for estimation that has not been determined by a Final Order, (ii) any Claim, proof of which was required to be filed by order of the Bankruptcy Court but as to which a proof of claim was not timely or properly filed, (iii) any Claim that is listed in the Schedules, if any are filed, as unliquidated, contingent, or disputed, and as to which no request for payment or proof of claim has been filed, or (iv) any Claim that is otherwise disputed by any of the Debtors or the Plan Administrator (on behalf of Wind Down Co) in accordance with applicable law or contract, which dispute has not been withdrawn, resolved, or overruled by a Final Order.   To the extent the Debtors or the Plan Administrator, as applicable, dispute only the amount of a Claim, such Claim shall be deemed Allowed in the amount the Debtors or the Plan Administrator, as applicable, do not dispute, if any, and Disputed as to the balance of such Claim.

**1.63** **"Distribution Record Date"** means, except as otherwise provided in this Plan, the Effective Date.

**1.64** **"Effective Date"** means the date, with respect to the Plan, that is the first Business Day selected by the Debtors on which (i) all conditions to the effectiveness of this Plan set forth in Section 9.1 of this Plan have been satisfied or waived in accordance with the terms of this Plan, (ii) no stay of the Confirmation Order is in effect, (iii) the substantial consummation of this Plan occurs pursuant to section 1101(2) of the Bankruptcy Code, and (iv) the Plan is declared effective.   Without limiting the foregoing, any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

**1.65** **"Entity"** means an "entity," as defined in section 101(15) of the Bankruptcy Code.

**1.66** **"Estate(s)"** means, individually or collectively, the estate or estates of the Debtors created under section 541 of the Bankruptcy Code.

**1.67** **"Exculpated Parties"** means, collectively, solely in their capacities as such, (i) the Debtors, (ii) the Independent Managers, and (iii) the Creditors' Committee and the members of the Creditors' Committee solely in their capacity as such.

**1.68** **"Fee Claim"** means a Claim for professional services rendered or costs and expenses incurred on or after the Petition Date through the Effective Date by Professional Persons.

1.69 *"Fee Escrow Account"* means an account in an amount equal to the total estimated amount of Fee Claims and funded by the Debtors on or before the Effective Date.

1.70 *"Final DIP Order"* means the order of the Bankruptcy Court approving the DIP Motion on a final basis (Docket No. 198).

1.71 *"Final Order"* means, as applicable, an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court, which has not been reversed, vacated, stayed, modified, or amended, and as to which (i) the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (ii) if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument, or rehearing shall have expired; *provided* that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in another court of competent jurisdiction) or sections 502(j) or 1144 of the Bankruptcy Code has been or may be filed with respect to such order or judgment.

1.72 *"Former Sponsors"* means, collectively, AMP Limited, AMP Group Holdings Limited, AMP Holdings Limited, Collimate Capital Holdings Ltd., AMP Capital Investors International Holdings Limited, AMP Capital Holdings Limited, Dexus Falcon Pty Limited, and any of their respective current or former Affiliates as of October 24, 2023; provided that no Debtor, Sponsor, or Related Party or current Affiliate of any Debtor or any Sponsor shall constitute a Former Sponsor hereunder.

1.73 *"General Unsecured Claim"* means any general unsecured Claim, including any OpCo Lender Deficiency Claim, HoldCo Lender Deficiency Claim, and Claim against the Debtors that is not (i) an Administrative Expense Claim, (ii) a DIP Claim, (iii) a Priority Tax Claim, (iv) an Other Priority Claim, (v) an OpCo Lender Secured Claim, (vi) a HoldCo Lender Secured Claim, (vii) an Other Secured Claim, (viii) an Intercompany Claim, (ix) a Subordinated Claim, or (x) a Claim that is secured, subordinated, or entitled to priority under the Bankruptcy Code.

1.74 *"Governmental Unit"* has the meaning set forth in section 101(27) of the Bankruptcy Code.

1.75 *"HoldCo"* means Midwest Fiber Holdings LP.

1.76 *"HoldCo Administrative Expense Claims"* means all Administrative Expense Claims against HoldCo and TopCo.

1.77 *"HoldCo Agent"* means Alter Domus (US) LLC.

1.78 *"HoldCo Credit Agreement"* means that certain *Credit and Guaranty Agreement*, dated as of March 29, 2022 (as amended pursuant to that certain Waiver and Amendment No. 1 to Credit and Guaranty Agreement and Pledge and Security Agreement, dated as of October 24, 2023, Amendment No. 2 to Credit and Guaranty Agreement, dated as of February 14, 2024, and Amendment No. 3 to Credit and Guaranty Agreement, dated as of March 13, 2024, and as may be further amended, restated, supplemented, or otherwise modified from time to time), by and among TopCo, as borrower, HoldCo, as pledgor, the lenders party thereto, and the HoldCo Agent, as administrative agent and collateral agent.

1.79    **"HoldCo Credit Agreement Parties"** means, collectively, the HoldCo Lenders and the HoldCo Agent.

1.80    **"HoldCo Equity Interests"** means any Interest in HoldCo.

1.81    **"HoldCo General Unsecured Claims"** means all General Unsecured Claims against HoldCo and TopCo.  For the avoidance of doubt, any HoldCo General Unsecured Claim that has been expressly assumed by the Successful Bidder under the WholeCo Sale Documents shall not constitute a HoldCo General Unsecured Claim hereunder.

1.82    **"HoldCo Lender Claims"** means all Claims arising from the HoldCo Loan Documents and all documents executed by any of the Debtors related thereto.

1.83    **"HoldCo Lenders"** means the lenders under the HoldCo Credit Agreement.

1.84    **"HoldCo Lender Deficiency Claims"** means all Claims arising under the HoldCo Loan Documents and all documents that are obligations of the Debtors related thereto that are not Secured Claims, if any.

1.85    **"HoldCo Loan Documents"** means the "Loan Documents" as defined in the HoldCo Credit Agreement.

1.86    **"HoldCo Lender Secured Claims"** means all Secured Claims of the HoldCo Credit Agreement Parties arising under or in connection with the HoldCo Loan Documents and all documents executed by any of the Debtors related thereto.

1.87    **"Impaired"** means, with respect to a Claim, Interest, or a Class of Claims or Interests, "impaired" within the meaning of such term in section 1124 of the Bankruptcy Code.

1.88    **"Indemnification Obligation"** means any existing obligation of any Debtor to indemnify current directors, officers, members, managers, agents, or employees of any of the Debtors who served in such capacity (but in each case, solely in their capacity as such), with respect to or based upon such service or any act or omission taken or not taken in any of such capacities, or for or on behalf of any Debtor, whether pursuant to agreement, the Debtors' respective memoranda, articles or certificates of incorporation or formation, corporate charters, bylaws, operating agreements, limited liability company agreements, or similar corporate or organizational documents or other applicable contract or law in effect as of the Effective Date.

1.89    **"Independent Managers"** means Michael Robinson and Melker Sandberg, each in their respective capacities as independent managers of HoldCo and OpCo and independent directors of Lynx Network Group, Inc.

1.90    **"Intercompany Claim"** means any pre- or postpetition Claim held by another Debtor.

1.91    **"Intercompany Interest"** means an Interest held by another Debtor.

1.92    **"Interest"** means any equity security (as defined in section 101(16) of the Bankruptcy Code) in any of the Debtors, and any other security or equity interest in any of the Debtors, including all ordinary shares, units, common stock, preferred stock, membership interest, partnership interest, or other instrument, evidencing any fixed or contingent ownership interest in any of the Debtors, whether or not transferable and whether fully vested or vesting in the future, including any option, warrant, or other right,

contractual or otherwise, to acquire any such interest in the Debtors, that existed immediately before the Effective Date, and including any equity interest issued to any of the Debtors' current or former employees and non-employee directors in various forms of long-term incentive compensation including stock options, stock appreciation rights, restricted stock, restricted stock units, performance shares/units, incentive awards, Cash awards, and other stock-based awards.

**1.93** **"Interim DIP Order"** means the order of the Bankruptcy Court approving the DIP Motion on an interim basis (Docket No. 67).

**1.94** **"IRS"** means the Internal Revenue Service.

**1.95** **"Letters of Credit"** means any outstanding letters of credit issued to any of the Debtors.

**1.96** **"Lien"** has the meaning set forth in section 101(37) of the Bankruptcy Code.

**1.97** **"MidCo"** means Midwest Fiber Acquisition Midco 1 LLC.

**1.98** **"OpCo"** means Midwest Fiber Acquisition LLC.

**1.99** **"OpCo Agent"** means Société Générale.

**1.100** **"OpCo Credit Agreement"** means that certain *Credit and Guaranty Agreement*, dated as of March 29, 2022 (as amended pursuant to that certain Amendment No. 1 to Credit and Guaranty Agreement, dated as of April 28, 2022, Consent, Waiver and Amendment No. 2 to Credit and Guaranty Agreement, dated as of April 21, 2023, Waiver and that certain Amendment No. 3 to the Credit and Guaranty Agreement, dated as of October 24, 2024, Amendment No. 4 to Credit and Guaranty Agreement, dated as of February 22, 2024, Amendment" No. 5 to Credit and Guaranty Agreement, dated as of March 13, 2024, Amendment No. 6 to Credit and Guaranty Agreement, dated as of October 9, 2024, Amendment No. 7 to Credit and Guaranty Agreement and Amendment No. 1 to Pledge and Security Agreement, dated as of December 16, 2024, Amendment No. 8 and Waiver to Credit and Guaranty Agreement and Amendment No. 2 to Pledge and Security Agreement, dated as of February 25, 2025, and as may be further amended, restated, supplemented, or otherwise modified from time to time), by and among OpCo, as borrower, MidCo, as pledgor, the subsidiary guarantors thereunder, the lenders party thereto, the OpCo Agent, as administrative agent.

**1.101** **"OpCo Credit Agreement Parties"** means, collectively, the OpCo Lenders and the OpCo Agent.

**1.102** **"OpCo General Unsecured Claims"** means all General Unsecured Claims against MidCo, OpCo, or any of their direct or indirect subsidiaries. For the avoidance of doubt, any OpCo General Unsecured Claim that has been expressly assumed by Successful Bidder under the WholeCo Sale Documents shall not constitute an OpCo General Unsecured Claim hereunder.

**1.103** **"OpCo Lender Claims"** means all Claims arising from the OpCo Loan Documents and all documents executed by any of the Debtors related thereto.

**1.104** **"OpCo Lenders"** means the lenders under the OpCo Credit Agreement.

**1.105** **"OpCo Lender Deficiency Claims"** means all Claims arising under the OpCo Loan Documents and all documents that are obligations of the Debtors related thereto that are not Secured Claims, if any.

*1.106* *"OpCo Loan Documents"* means the "Loan Documents" as defined in the OpCo Credit Agreement.

*1.107* *"OpCo Loans"* means the loans issued and outstanding under the OpCo Credit Agreement.

*1.108* *"OpCo Lender Secured Claims"* means all Secured Claims of the OpCo Credit Agreement Parties arising under or in connection with the OpCo Loan Documents and all documents executed by any of the Debtors related thereto.  For the avoidance of doubt, the Roll-Up DIP Loans Claims shall constitute DIP Claims and not OpCo Lender Secured Claims.

*1.109* *"Other Priority Claim"* means any Claim other than an Administrative Expense Claim, a DIP Claim, or a Priority Tax Claim that is entitled to priority of payment as specified in section 507(a) of the Bankruptcy Code.

*1.110* *"Other Secured Claim"* means any Secured Claim against a Debtor other than an Administrative Expense Claim, DIP Claim, a Priority Tax Claim, an Other Priority Claim, an OpCo Lender Secured Claim, or a HoldCo Lender Secured Claim, if any.  For the avoidance of doubt, OpCo Lender Deficiency Claims and HoldCo Lender Deficiency Claims are not Secured Claims or Other Secured Claims.

*1.111* *"Person"* has the meaning set forth in section 101(41) of the Bankruptcy Code, including any individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited partnership, trust, estate, unincorporated organization, Governmental Unit, or other Entity.

*1.112* *"Petition Date"* means, with respect to a Debtor, the date on which such Debtor commenced its Chapter 11 Case.

*1.113* *"Plan"* means this joint chapter 11 plan, including all appendices, exhibits, schedules, and supplements hereto (including any appendices, schedules, and supplements to this Plan contained in the Plan Supplement), as may be amended, supplemented, or otherwise modified from time to time in accordance with the Bankruptcy Code and the terms hereof.

*1.114* *"Plan Administrator"* means the plan administrator identified in the Plan Supplement, or any successor appointed in accordance with the Plan Administrator Agreement and the Wind Down Co Organizational Documents and with the consent of the Requisite Prepetition Lenders.

*1.115* *"Plan Administrator Agreement"* means the agreement setting forth, among other things, the identity, terms of compensation, and authority of the Plan Administrator, and the scope of services to be provided by the Plan Administrator.

*1.116* *"Plan Distribution"* means the payment or distribution of consideration to holders of Allowed Claims and Interests under this Plan.

*1.117* *"Plan Supplement"* means a supplement or supplements to this Plan containing certain documents and forms of documents, schedules, and exhibits relevant to the implementation of this Plan, to be filed with the Bankruptcy Court, as amended, supplemented, or otherwise modified from time to time in accordance with the terms hereof, the Bankruptcy Code, and the Bankruptcy Rules, which shall include (i) information required to be disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code, (ii) the Schedule of Retained Causes of Action, (iii) the Schedule of Assumed Contracts, (iv) the Wind Down Co Organizational Documents, (v) the Wind Down Budget, (vi) the Plan Administrator Agreement, (vii) the Plan Transactions Exhibit, and (viii) the Claims Ombudsman Agreement; *provided* that through

the Effective Date, the Debtors shall have the right to amend the documents contained in the Plan Supplement in accordance with the terms of the Plan; *provided further*, that each of the above, and any amendments thereto, shall be in the form and substance acceptable to the Requisite Prepetition Lenders.

**1.118** **"Plan Transactions Exhibit"** means the exhibit setting forth the material components of the transactions that are necessary or desirable to effectuate the transactions contemplated by this Plan (including the Wind Down) and any related disclosures in connection therewith.

**1.119** **"PNC"** means PNC Bank, National Association.

**1.120** **"Post-Effective Date Debtors"** means, collectively, the Debtors on and after the Effective Date, and, to the extent necessary to give effect to the Restructuring Transactions (as defined in the Plan Transactions Exhibit) and any other transaction contemplated by the Plan, Everstream Blocker LLC and Everstream GP LLC (each as defined in the Plan Transactions Exhibit).

**1.121** **"Prepetition Lender Advisors"** means Paul Hastings LLP and FTI Consulting, Inc., as counsel and financial advisor, respectively, to the Prepetition Lenders, the DIP Lenders, and the DIP Agent.

**1.122** **"Prepetition Lenders"** means, collectively, the DIP Lenders, the OpCo Lenders, and the HoldCo Lenders.

**1.123** **"Priority Tax Claim"** means any Claim of a governmental unit (as defined in section 101(27) of the Bankruptcy Code) of the kind entitled to priority of payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**1.124** **"Pro Rata"** means the proportion that an Allowed Claim or Interest in a particular Class bears to the aggregate amount of all Allowed Claims or Interests in that Class.

**1.125** **"Professional Person"** means any Person (i) retained by order of the Bankruptcy Court in connection with the Chapter 11 Cases pursuant to sections 327, 328, 330, 331, 363, or 1103 of the Bankruptcy Code, excluding any ordinary course professional retained pursuant to an order of the Bankruptcy Court, or (ii) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(5) of the Bankruptcy Code. For the avoidance of doubt, the Stakeholder Advisors are not Professional Persons.

**1.126** **"Proof of Claim"** means a proof of Claim filed against any of the Debtors in the Chapter 11 Cases.

**1.127** **"Rejection Damages Claims"** has the meaning set forth in the motion to approve the Claims Bar Date Order (Docket No. 276).

**1.128** **"Rejection Outside Date"** means (i) September 1, 2026 or (ii) such later date agreed to by the Debtors or the Plan Administrator, as applicable, and the Requisite Prepetition Lenders and in consultation with the Claims Ombudsman.

**1.129** **"Related Party"** means, with respect to any Person, (i) such Person's predecessors, successors and assigns, parents, subsidiaries, affiliates and general partners thereof, affiliated investment funds or investment vehicles, managed or advised accounts, funds, and investment advisors, subadvisors, or managers, (ii) with respect to such Person and each of the foregoing in clause (i), such Person's respective current and former officers, directors, principals, equity holders (regardless of whether such interests are held directly or indirectly and any fund managers, fiduciaries, or other agents with any

involvement related to the Debtors), members, partners, employees, agents, trustees, board members, board observers, financial advisors, attorneys, accountants, actuaries, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals; and (iii) with respect to each Person and each of the foregoing in clauses (i)–(ii), such Person's respective heirs, executors, estates, servants, and nominees, and, with respect to each Person and each of the foregoing in clauses (i)–(iii), each in their capacity as such.  For the avoidance of doubt, (a) former officers of the Debtors that departed the Debtors from October 24, 2023 through the Petition Date, (b) the Select Former Officers and Directors, (c) the RSM Parties, and (d) the Former Sponsors shall not be considered Related Parties of any Released Parties or Releasing Parties.

*1.130*   *"Released Parties"* means, collectively, each in their respective capacities as such, (i) the Debtors, (ii) the Plan Administrator, (iii) the Prepetition Lenders,  (iv) the Sponsor, (v) the Agents, (vi) the DIP Lenders, (vii) the DIP Agent, (viii) the Successful Bidder, (ix) the Creditors' Committee and each of its members, and (x) each Related Party of each of the foregoing Persons in clauses (i) through (ix).  Notwithstanding anything to the contrary herein, the following parties shall not constitute "Released Parties" hereunder: (a) any Person that opts out of the releases set forth in Section 10.6(b) of this Plan shall not be a Released Party; (b) any former officer of the Debtors that departed the Debtors from October 24, 2023 through the Petition Date; (c) the Select Former Officers and Directors, solely in their respective capacities as former officers and directors of the Debtors; (d) the RSM Parties, solely in their capacities as auditor to the Debtors; and (e) the Former Sponsors.

*1.131*   *"Releasing Parties"* means, collectively, each in their respective capacities as such, (i) the Debtors, (ii) the Plan Administrator, (iii) the Prepetition Lenders, (iv) the Sponsor, (v) the Agents, (vi) the DIP Lenders, (vii) the DIP Agent, (viii) the Successful Bidder, (ix) the Creditors' Committee and each of its members, (x) all holders of Claims that are entitled to vote to accept or reject the Plan that do not opt out of granting the releases set forth in Section 10.6(b) of this Plan, (xi) all holders of Claims or Interests that are not entitled to vote to accept or reject the Plan (other than the Sponsor) that do not opt out of granting the releases set forth in Section 10.6(b) of this Plan, and (xii) each Related Party of each Person in clauses (i) through (xi) for which such Person is legally entitled to bind such Related Party to the releases set forth in Section 10.6(b) of this Plan under applicable law.

*1.132*   *"Requisite Prepetition Lenders"* means, as of the date of determination, (i) Prepetition Lenders holding, in the aggregate, at least 75.0% of outstanding DIP Loans; provided that, for purposes of any consent that would, directly or indirectly, amend, modify, or otherwise impact Section 3.1.1 of the DIP Credit Agreement (Repayment and Prepayments), the consent of Prepetition Lenders holding, in the aggregate, at least 85.0% of the outstanding DIP Loans shall be required; (ii) Prepetition Lenders that hold in the aggregate at least 75.0% of the outstanding OpCo Loans; and (iii) Prepetition Lenders that hold in the aggregate at least 75.0% of the outstanding HoldCo Loans held by all Prepetition Lenders.

*1.133*   *"Restructuring Expenses"* the reasonable and documented fees and out-of-pocket expenses, to the extent invoiced and subject to and in accordance with the terms of any applicable engagement letter or fee letter, as the case may be, and any applicable law or orders of the Bankruptcy Court, of the Prepetition Lender Advisors.

*1.134*   *"Retained Causes of Action"* means the Causes of Action identified on the Schedule of Retained Causes of Action.  For the avoidance of doubt, the Causes of Action released in Article X of this Plan are not Retained Causes of Action.  For the avoidance of doubt, Retained Causes of Action shall not include any right, Claim, or Cause of Action that is to be transferred or assigned to the Successful Bidder under the terms of the WholeCo Sale Documents.

*1.135*   *"Roll-Up DIP Loans"* has the meaning set forth in the Final DIP Order.

*1.136* **"Roll-Up DIP Loans Claim"** means an Allowed DIP Claim arising from the Roll-Up DIP Loans.

*1.137* **"RSM Parties"** means RSM US LLP and any of its Related Parties.

*1.138* **"Sale Proceeds"** means the net proceeds of the WholeCo Sale Transaction, including the Wind Down Reversion Amount, if any.

*1.139* **"Sale Proceeds Distributable Consideration"** means the sum of (a) the Debtors' cash on hand immediately prior to the Effective Date and (b) any Sale Proceeds, *less* (i) the amount of cash necessary to (x) fund amounts to satisfy all Cure Amounts in full in Cash (including to fund a reserve for any Disputed Cure Amounts as set forth in Section 8.2 of the Plan), (y) fund amounts necessary to pay holders of Allowed (and reserve for Disputed) Administrative Expense Claims, DIP Claims, Priority Tax Claims, Other Priority Claims, and Other Secured Claims, in full in Cash; *provided* that any such reserve for Claims not yet subject to an applicable bar date as of the Effective Date shall include a good faith estimate of such Claims by the Debtors or the Plan Administrator, as applicable, and (z) fund the Wind Down Fund; and (ii) any Cash in the Credit Card Program Account.

*1.140* **"Schedule of Assumed Contracts"** means the schedule of executory contracts and unexpired leases to be assumed by the Debtors pursuant to this Plan, if any, as the same may be amended, supplemented, or otherwise modified from time to time.

*1.141* **"Schedule of Rejected Contracts"** means the schedule of executory contracts and unexpired leases to be rejected by the Debtors pursuant to this Plan, if any, as the same may be amended, supplemented, or otherwise modified from time to time.

*1.142* **"Schedule of Retained Causes of Action"** means a schedule of certain Claims and Causes of Action of the Debtors that are not released, waived, or transferred pursuant to the Plan, which schedule shall be included in the Plan Supplement; *provided* that in no instance shall Claims or Causes of Action against any Released Party or any Exculpated Party that have been released or exculpated pursuant to this Plan be retained.

*1.143* **"Schedules"** means any schedules of assets and liabilities, schedules of executory contracts and unexpired leases, and statements of financial affairs filed by the Debtors pursuant to section 521 of the Bankruptcy Code.

*1.144* **"Secured Claim"** means a Claim to the extent (i) secured by a Lien on property of a Debtor's Estate, the amount of which is equal to or less than the value of such property as (a) set forth in this Plan, (b) agreed to by the holder of such Claim and the Debtors, or (c) determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code, or (ii) secured by the amount of any right of setoff of the holder thereof in accordance with section 553 of the Bankruptcy Code.

*1.145* **"Securities Act"** means the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a–77aa, and the rules and regulations promulgated thereunder.

*1.146* **"Security"** means any "security" as such term is defined in section 101(49) of the Bankruptcy Code.

*1.147* **"Select Former Officers and Directors"** means Brett Lindsay, Christian Gartner, Bill Major, Sam Sixt, Jeff Gaillard, Joe Pellegrini, and Drew Mullin.

*1.148* **"Settlement Parties"** has the meaning set forth in <u>Section 5.2(b)</u> of this Plan.

*1.149* **"Solicitation"** means the solicitation of votes to accept or reject this Plan pursuant to, and in compliance with, the Bankruptcy Code.

*1.150* **"Solicitation Procedures"** means the procedures relating to the Solicitation.

*1.151* **"Sponsor"** means, collectively, InfraBridge Investors (GIF II G.P.) S.à.r.l. (as general partner of InfraBridge Global Infrastructure Fund II A LP, InfraBridge Global Infrastructure Fund II B LP, InfraBridge Global Infrastructure Fund II C LP and InfraBridge Global Infrastructure Fund II E LP), Midwest Fiber Intermediate US LP and Midwest Fiber Management LP.

*1.152* **"Sponsor Counsel"** means Kirkland & Ellis LLP, as counsel to the Sponsor.

*1.153* **"Stakeholder Advisors"** means (i) the Prepetition Lender Advisors and (ii) the Sponsor Counsel.

*1.154* **"Statutory Fees"** means all fees and charges assessed against the Estates pursuant to sections 1911 through 1930 of chapter 123 of title 28 of the United States Code.

*1.155* **"Subordinated Claim"** means a Claim that is subject to subordination in accordance with sections 510(b)-(c) of the Bankruptcy Code or otherwise.

*1.156* **"Successful Bid"** has the meaning set forth in the Bidding Procedures.

*1.157* **"Successful Bidder"** means (i) Bluebird or (ii) if the Back-Up Bidder is deemed the Successful Bidder pursuant to the Bidding Procedures, the Back-Up Bidder.

*1.158* **"Tax Code"** means the Internal Revenue Code of 1986, as amended from time to time.

*1.159* **"TopCo"** means Midwest Fiber Acquisition Topco LLC.

*1.160* **"Transferred Assets"** has the meaning set forth in the WholeCo Purchase Agreement.

*1.161* **"Treasury Regulations"** means the income tax regulations, including temporary regulations, promulgated under the Tax Code, as such regulations may be amended from time to time (including corresponding provisions of succeeding regulations).

*1.162* **"U.S. Trustee"** means the Office of the United States Trustee for the Southern District of Texas.

*1.163* **"Unimpaired"** means, with respect to a Claim, Interest, or Class of Claims or Interests, not "impaired" within the meaning of sections 1123(a)(4) and 1124(2) of the Bankruptcy Code.

*1.164* **"Voting Deadline"** means November 11, 2025, or other such date and time as may set by the Bankruptcy Court.

*1.165* **"Waterfall Recovery Priority"** means the following distribution priority (in each case, until paid in full in Cash): (i) *first*, on account of Allowed Administrative Expense Claims, Allowed DIP Claims, Allowed Priority Tax Claims, and Allowed Other Priority Claims (if any); (ii) *second*, on account of Allowed Other Secured Claims (if any); and (iii) *third*, on account of Allowed OpCo Lender Secured Claims.

*1.166* **"WholeCo Closing Date"** means the date of consummation of the WholeCo Sale Transaction with the Successful Bidder.

*1.167* **"WholeCo Purchase Agreement"** means the equity or asset purchase agreement entered into with the Successful Bidder.

*1.168* **"WholeCo Sale Documents"** means, collectively, all agreements, documents, orders, and/or amendments in connection with the WholeCo Sale Transaction, including the WholeCo Purchase Agreement, the Bidding Procedures, and the WholeCo Sale Order.

*1.169* **"WholeCo Sale Process"** means the sale and marketing process for the WholeCo Sale Transaction.

*1.170* **"WholeCo Sale Order"** means the order of the Bankruptcy Court approving the WholeCo Sale Transaction under sections 105, 363, and 365 of the Bankruptcy Code (Docket No. 364).

*1.171* **"WholeCo Sale Transaction"** means the sale of all or substantially all of the Debtors' assets other than the IL Divested Business Assets and the MO Divested Business Assets (each as defined in the WholeCo Purchase Agreement).

*1.172* **"Wind Down"** means, following the consummation of the WholeCo Sale Transaction, the process to wind down, dissolve, and liquidate the Estates and distribute any Sale Proceeds Distributable Consideration not otherwise distributed on the Effective Date, and liquidate or otherwise administer, or distribute the proceeds of, any remaining assets in accordance with this Plan.

*1.173* **"Wind Down Budget"** means a budget to be agreed between the Debtors and the Requisite Prepetition Lenders for the disbursement of the Wind Down Fund to effectuate the Wind Down, including as it pertains to the payment of Cure Amounts (including to fund a reserve for any Disputed Cure Amounts as set forth in Section 8.2 of the Plan) and the funding of amounts necessary to pay holders of Allowed (and reserve for Disputed) Administrative Expense Claims, Priority Tax Claims, Other Priority Claims, and Other Secured Claims in full in Cash; *provided* that any such reserve for Claims not yet subject to a bar date as of the Effective Date shall include a good faith estimate of such Claims by the Debtors or the Plan Administrator, as applicable; *provided, further*, that the Plan Administrator may reallocate the Wind Down Budget with the consent of the Requisite Prepetition Lenders.

*1.174* **"Wind Down Co"** means an Entity or Entities that, in the discretion of Debtors with the consent of the Requisite Prepetition Lenders, may be established or designated on the Effective Date for the benefit of holders of Claims against the Debtors (which Entity may be a liquidating trust) in connection with the distribution of cash on hand, proceeds from the WholeCo Sale Transaction, and any other assets of the Debtors, in accordance with the Plan Transactions Exhibit.

*1.175* **"Wind Down Co Interim Distributions"** means the distributions required to be made by the Plan Administrator with the Wind Down Co Interim Proceeds.

*1.176* **"Wind Down Co Interim Proceeds"** means the proceeds derived from the monetization of any assets of Wind Down Co or the Post-Effective Date Debtors, including proceeds from the settlement or compromise of, or recovery with respect to, any Claims or Causes of Action and proceeds from the disposition of any assets held by Wind Down Co or the Post-Effective Date Debtors.

    *1.177* ***"Wind Down Co Organizational Documents"*** means any organizational or constituent documents of Wind Down Co, including a liquidating trust agreement, if applicable, substantially final forms of which will be contained in the Plan Supplement.

    *1.178* ***"Wind Down Fund"*** means the amount of Cash equal to the aggregate amount of projected disbursements set forth in the Wind Down Budget (*plus* any additional amounts recovered or realized by Wind Down Co in accordance with the Wind Down), which amount shall be retained or transferred to Wind Down Co to fund the Wind Down in accordance with the Wind Down Budget.

    *1.179* ***"Wind Down Reversion Amount"*** means the amount (if any) remaining in the Wind Down Fund after the Plan Administrator completes all of its duties under the Plan, including the Wind Down (other than the distribution of the Wind Down Reversion Amount in accordance with the Plan), and all liabilities of Wind Down Co and the Post-Effective Date Debtors have been satisfied or otherwise extinguished.

    **B.**    **Interpretation; Application of Definitions; Rules of Construction**.

    Unless otherwise specified, all section or exhibit references in this Plan are to the respective section in or exhibit to this Plan, as the same may be amended, waived, or modified from time to time in accordance with the terms hereof.  The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained therein, and have the same meaning as "in this Plan," "of this Plan," "to this Plan," and "under this Plan," respectively.  The words "includes" and "including" are not limiting.  The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  For purposes herein: (i) in the appropriate context, each term, whether stated in the singular or plural, shall include both the singular and plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (ii) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (iii) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (iv) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (v) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; (vi) except as otherwise provided herein, any reference to a document or agreement that is to be issued or entered into that is dependent on an election to be made pursuant to the Plan or an event occurring shall be deemed to be followed by the words "if applicable"; and (vii) except as otherwise provided, any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter.

    **C.**    **Reference to Monetary Figures**.

    All references in this Plan to monetary figures shall refer to the legal tender of the United States of America unless otherwise expressly provided.

    **D.**    **Controlling Document**.

    In the event of an inconsistency between this Plan and any other instrument or document created or executed pursuant to this Plan, or between this Plan and the Disclosure Statement, this Plan shall control. The provisions of this Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effectuate the purposes of each; *provided* that if there is determined to be any

inconsistency between any provision of this Plan and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern, and any such provisions of the Confirmation Order shall be deemed a modification of this Plan.

## ARTICLE II.    ADMINISTRATIVE EXPENSE CLAIMS, FEE CLAIMS, AND PRIORITY TAX CLAIMS.

### 2.1    *Treatment of DIP Claims*.

All DIP Claims (a) shall be deemed Allowed as of the Effective Date in an amount equal to the aggregate amount of the DIP Obligations (as defined in the DIP Order), including (i) the principal amount outstanding under the DIP Facility on such date, (ii) all interest accrued and unpaid thereon through and including the date of payment, and (iii) all accrued fees, expenses, and indemnification obligations payable under the DIP Loan Documents and (b) shall not be subject to any avoidance, reductions, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment, objection, or any other challenges under any applicable Law or regulation by any Person.

On the Effective Date, except to the extent that a Holder of an Allowed DIP Claim agrees to a less favorable treatment, in exchange for each Allowed DIP Claim, each Allowed DIP Claim shall be indefeasibly paid in full and in Cash.  Contemporaneously with the foregoing treatment, the DIP Facility and the DIP Loan Documents shall be deemed cancelled, all commitments under the DIP Loan Documents shall be deemed terminated, all DIP Facility Liens shall automatically terminate, and all collateral subject to such DIP Facility Liens shall be automatically released, in each case without further action by the DIP Agent or the DIP Lenders.  The DIP Agent shall take all actions to effectuate and confirm such termination and release in connection with this <u>Section 2.1</u> as reasonably requested by the Debtors or the Successful Bidder.

### 2.2    *Treatment of Administrative Expense Claims*.

On (or as soon thereafter as is reasonably practicable) the later of (i) the Effective Date and (ii) the first Business Day after the date that is 30 calendar days after the date each Administrative Expense Claim becomes an Allowed Administrative Expense Claim, each holder of an Allowed Administrative Expense Claim (other than a Fee Claim) shall receive, in exchange for such Claim, either (a) Cash in an amount equal to the Allowed amount of such Claim or such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code or (b) such other less favorable treatment as to which the Debtors or the Plan Administrator, as applicable, and the holder of such Allowed Administrative Expense Claim will have agreed upon in writing; *provided* that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors, as Debtors in Possession, shall be paid by the Debtors or the Plan Administrator, as applicable, in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any orders or agreements governing, instruments evidencing, or other documents establishing, such liabilities.  For the avoidance of doubt, any Allowed Administrative Expense Claim that has been expressly assumed by the Successful Bidder under the WholeCo Sale Documents shall not be an obligation of the Debtors, Wind Down Co, or the Post-Effective Date Debtors, as applicable.

Except as otherwise provided in this <u>Section 2.2</u>, and except with respect to Administrative Expense Claims that are DIP Claims or Fee Claims, requests for payment of Administrative Expense Claims must be filed and served on the Debtors or the Plan Administrator, as applicable, pursuant to the procedures

specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than the Administrative Expense Claims Bar Date.

**HOLDERS OF ADMINISTRATIVE EXPENSE CLAIMS THAT ARE REQUIRED TO, BUT DO NOT, FILE AND SERVE A REQUEST FOR PAYMENT OF SUCH ADMINISTRATIVE EXPENSE CLAIMS BY THE ADMINISTRATIVE EXPENSE CLAIMS BAR DATE SHALL BE FOREVER BARRED, ESTOPPED, AND ENJOINED FROM ASSERTING SUCH ADMINISTRATIVE EXPENSE CLAIMS AGAINST THE DEBTORS, THE ESTATES, WIND DOWN CO, THE POST-EFFECTIVE DATE DEBTORS, THE PLAN ADMINISTRATOR, THE SUCCESSFUL BIDDER, OR THE PROPERTY OF ANY OF THE FOREGOING, AND SUCH ADMINISTRATIVE EXPENSE CLAIMS SHALL BE DEEMED CANCELLED, RELEASED, AND EXTINGUISHED AS OF THE EFFECTIVE DATE.**

  **2.3**  *Treatment of Fee Claims*.

  (a)  All Professional Persons seeking approval by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 327, 328, 330, 331, 363, 503(b)(2), 503(b)(3), 503(b)(4), 503(b)(5), or 1103 of the Bankruptcy Code shall (i) file, on or before the date that is 30 days after the Effective Date, their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred and (ii) be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court or authorized to be paid in accordance with the order(s) relating to or allowing any such Fee Claim. The Plan Administrator is authorized to retain and pay compensation for professional services rendered and reimbursement of expenses incurred after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval, subject to the Wind Down Budget.

  (b)  On or prior to the Effective Date, the Debtors shall establish and fund the Fee Escrow Account. The Debtors shall fund the Fee Escrow Account with Cash equal to the Professional Persons' good faith estimates of the Fee Claims, which estimates shall be delivered to the Debtors at least two Business Days prior to the anticipated Effective Date. If a Professional Person does not provide an estimate, the Debtors or the Plan Administrator, as applicable, may estimate the unpaid and unbilled reasonable and necessary fees and out-of-pocket expenses of such Professional Person. Funds held in the Fee Escrow Account shall not be considered property of the Estates or property of Wind Down Co or the Post-Effective Date Debtors, but shall revert to Wind Down Co only after all Fee Claims allowed by the Bankruptcy Court have been irrevocably paid in full. The Fee Escrow Account shall be held in trust for Professional Persons and for no other parties until all Fee Claims Allowed by the Bankruptcy Court have been paid in full. Fee Claims owing to the applicable Professional Persons shall be paid in full, in Cash, to such Professional Persons from funds held in the Fee Escrow Account when such Claims are Allowed by an order of the Bankruptcy Court or authorized to be paid under any order of the Bankruptcy Court governing the payment of Professional Persons; *provided* that the Debtors' obligations with respect to Fee Claims shall not be limited to or deemed limited to the balance of funds held in the Fee Escrow Account. To the extent that funds held in the Fee Escrow Account are insufficient to satisfy the amount of accrued Fee Claims owing to the Professional Persons, such Professional Persons shall have an Allowed Administrative Expense Claim for any such deficiency, which shall be satisfied in accordance with Section 2.2 of this Plan. To the extent surplus funds remain in the Fee Escrow Account after all Fee Claims have been resolved by the Bankruptcy Court or settled, such funds shall be returned to Wind Down Co. No Liens, Claims, or Interests shall encumber the Fee Escrow Account in any way.

  (c)  Any objections to Fee Claims shall be served and filed (i) no later than 21 days after the filing of the final applications for compensation or reimbursement or (ii) such later date as ordered by the

Bankruptcy Court upon a motion of the Debtors, the Plan Administrator, or the Prepetition Lenders (subject to notice and the opportunity to object being provided).

### 2.4 *Treatment of Priority Tax Claims*.

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, in exchange for such Allowed Priority Tax Claim, at the sole option of the Debtors or the Plan Administrator, as applicable (i) Cash in an amount equal to such Allowed Priority Tax Claim on or as soon as reasonably practicable after the later of (a) the Effective Date, to the extent such Claim is an Allowed Priority Tax Claim on the Effective Date, (b) the first Business Day after the date that is 30 calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, and (c) the date such Allowed Priority Tax Claim is due and payable in the ordinary course, or (ii) such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

### 2.5 *Restructuring Expenses*.

The Restructuring Expenses incurred, or estimated to be incurred, up to and including the Effective Date, shall be paid in full in Cash on the Effective Date or as soon as reasonably practicable thereafter (to the extent not previously paid during the course of the Chapter 11 Cases) in accordance with, and subject to, the terms of the DIP Order and the Wind Down Budget, as applicable, without any requirement to file a fee application with the Bankruptcy Court or without any requirement for Bankruptcy Court review or approval. All Restructuring Expenses to be paid on the Effective Date shall be estimated in good faith prior to and as of the Effective Date, and such estimates shall be delivered to the Debtors at least two Business Days before the anticipated Effective Date; *provided* that such estimates shall not be considered an admission or limitation with respect to such Restructuring Expenses. At least one calendar day before the Effective Date, final invoices for all Restructuring Expenses incurred prior to and as of the Effective Date shall be submitted to the Debtors.

## ARTICLE III.    CLASSIFICATION OF CLAIMS AND INTERESTS.

### 3.1 *Classification in General*.

A Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation, and distribution under this Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code; *provided* that a Claim or Interest is placed in a particular Class for the purpose of receiving Plan Distributions pursuant to this Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and such Claim or Interest has not been satisfied, released, or otherwise settled prior to the Effective Date.

### 3.2 *Formation of Debtor Groups for Convenience Only*.

This Plan groups the Debtors together solely for the purpose of describing treatment under this Plan, confirmation of this Plan, and making Plan Distributions in respect of Claims against and Interests in the Debtors under this Plan. Such groupings shall not affect any Debtor's status as a separate legal entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger of consolidation of any legal entities, or cause the transfer of any Assets; and, except as otherwise provided by or permitted under this Plan, all Debtors shall continue to exist as separate legal entities.

### 3.3 *Summary of Classification of Claims and Interests*.

The following table designates the Classes of Claims against and Interests in the Debtors and specifies which Classes are: (i) Impaired and Unimpaired under this Plan; (ii) entitled to vote to accept or reject this Plan in accordance with section 1126 of the Bankruptcy Code; and (iii) presumed to accept or deemed to reject this Plan. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, DIP Claims, and Priority Tax Claims have not been classified. The classification of Claims and Interests set forth herein shall apply separately to each Debtor. Certain of the Debtors may not have holders of Claims or Interests in a particular Class or Classes, and such Classes shall be treated as set forth in Section 3.6 of the Plan.

| Class | Type of Claim or Interest | Impairment | Entitled to Vote |
|---|---|---|---|
| Class 1 | Other Secured Claims | Unimpaired | No (Presumed to accept) |
| Class 2 | Other Priority Claims | Unimpaired | No (Presumed to accept) |
| Class 3 | OpCo Lender Secured Claims | Impaired | Yes |
| Class 4 | OpCo General Unsecured Claims | Impaired | Yes |
| Class 5 | HoldCo Lender Secured Claims | Impaired | Yes |
| Class 6 | HoldCo General Unsecured Claims | Impaired | No (Deemed to reject) |
| Class 7 | Intercompany Claims | Impaired or Unimpaired | No (Presumed to accept or deemed to reject) |
| Class 8 | Subordinated Claims | Impaired | No (Deemed to reject) |
| Class 9 | HoldCo Equity Interests | Impaired | No (Deemed to reject) |
| Class 10 | Intercompany Interests | Impaired or Unimpaired | No (Presumed to accept or deemed to reject) |

### 3.4 *Special Provision Governing Unimpaired Claims*.

Except as otherwise provided in this Plan, nothing under this Plan shall affect the rights of the Debtors, Wind Down Co, or the Post-Effective Date Debtors, as applicable, in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

### 3.5 *Separate Classification of Other Secured Claims*.

Although all Other Secured Claims have been placed in one Class for purposes of nomenclature within the Plan, each Other Secured Claim, to the extent secured by a Lien on collateral different from the collateral securing a different Other Secured Claim, shall be treated as being in a separate sub-Class for the purposes of voting to accept or reject the Plan and receiving Plan Distributions.

### 3.6 *Elimination of Vacant Classes*.

Any Class that, as of the commencement of the Confirmation Hearing, does not have at least one holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes that votes on this Plan shall be considered vacant, deemed eliminated from this Plan for purposes of voting to accept or reject this Plan, and disregarded for purposes of determining whether this Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to such Class.

3.7     _**Voting Classes; Presumed Acceptance by Non-Voting Classes**_.

With respect to each Debtor, if a Class contained Claims eligible to vote and no holder of Claims eligible to vote in such Class votes to accept or reject this Plan, this Plan shall be presumed accepted by the holders of such Claims in such Class.

3.8     _**Voting; Presumptions; Solicitation**_.

(a)     **Acceptance by Certain Impaired Classes**.  Only holders of Allowed Claims in Classes 3, 4, and 5 are entitled to vote to accept or reject this Plan.  An Impaired Class of Claims entitled to vote shall have accepted this Plan if (i) the holders of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept this Plan and (ii) the holders of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept this Plan.  Holders of Claims in Classes 3, 4, and 5 shall receive Ballots containing detailed voting instructions.

(b)     **Deemed Acceptance by Unimpaired Classes**.  Holders of Claims and Interests in Classes 1 and 2 are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Accordingly, such holders are not entitled to vote to accept or reject this Plan.

(c)     **Deemed Rejection by Certain Impaired Classes**.  Holders of Claims and Interests in Classes 6, 8 and 9 are deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code.  Accordingly, such holders are not entitled to vote to accept or reject this Plan.

(d)     **Deemed Acceptance or Rejection by Certain Classes**.  Holders of Claims and Interests in Classes 7 and 10 are deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code or accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Accordingly, such holders are not entitled to vote to accept or reject this Plan.

3.9     _**Cramdown**_.

If any Class is deemed to reject this Plan or is entitled to vote on this Plan and does not vote to accept this Plan, the Debtors may (i) seek confirmation of this Plan under section 1129(b) of the Bankruptcy Code or (ii) amend or modify this Plan in accordance with the terms hereof and the Bankruptcy Code.  If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

3.10    _**No Waiver**_.

Nothing contained in this Plan shall be construed to waive a Debtor's, the Plan Administrator's, or other Person's right to object on any basis to any Claim.

**ARTICLE IV.     TREATMENT OF CLAIMS AND INTERESTS.**

4.1     _**Class 1:  Other Secured Claims**_.

(a)     **Treatment**:  On or as soon as reasonably practicable after the later of the Effective Date and the date that is 10 Business Days after the date such Other Secured Claim becomes an Allowed Claim, except to the extent that a holder of an Allowed Other Secured Claim agrees to less favorable treatment, each holder of an Allowed Other Secured Claim shall receive, in compromise, settlement, and release of and in

exchange for such Allowed Claim, at the option of the Debtors or the Plan Administrator, as applicable, either (i) Cash in an amount equal to the Allowed amount of such Other Secured Claim, (ii) reinstatement or such other treatment sufficient to render such holder's Allowed Other Secured Claim Unimpaired pursuant to section 1124 of the Bankruptcy Code, or (iii) such other recovery necessary to satisfy section 1129 of the Bankruptcy Code.

(b)     **Impairment and Voting**:  Allowed Other Secured Claims are Unimpaired.  In accordance with section 1126(f) of the Bankruptcy Code, the holders of Other Secured Claims are conclusively presumed to accept this Plan and are not entitled to vote to accept or reject this Plan, and the votes of such holders shall not be solicited with respect to such Other Secured Claims.

### 4.2     *Class 2:  Other Priority Claims*.

(a)     **Treatment**:  On or as soon as reasonably practicable after the later of the Effective Date and the date that is 10 Business Days after the date such Other Priority Claim becomes an Allowed Claim, except to the extent that a holder of an Allowed Other Priority Claim agrees to less favorable treatment, each holder of an Allowed Other Priority Claim shall receive, in compromise, settlement, and release of and in exchange for such Allowed Claim, at the option of the Debtors or the Plan Administrator, as applicable, either (i) Cash in an amount equal to the Allowed amount of such Claim or (ii) other treatment consistent with the provisions of section 1129 of the Bankruptcy Code.

(b)     **Impairment and Voting**:  Allowed Other Priority Claims are Unimpaired.  In accordance with section 1126(f) of the Bankruptcy Code, the holders of Other Priority Claims are conclusively presumed to accept this Plan and are not entitled to vote to accept or reject this Plan, and the votes of such holders shall not be solicited with respect to such Other Priority Claims.

### 4.3     *Class 3:  OpCo Lender Secured Claims*.

(a)     **Allowance**:  The OpCo Lender Secured Claims shall be deemed Allowed on the Effective Date, consisting of (i) $671,538,905 in principal amount, plus (ii) any interest paid in kind on or prior to the Effective Date, plus (iii) accrued and unpaid interest, fees, expenses, and other obligations arising, due, or owing under or in connection with the OpCo Loan Documents, in each case, to the extent permitted by the Bankruptcy Code and the DIP Order and calculated as of the Effective Date.

(b)     **Treatment**:  Except to the extent that a holder of an Allowed OpCo Lender Secured Claim agrees to less favorable treatment, each holder of an Allowed OpCo Lender Secured Claim shall receive, in compromise, settlement, and release of and in exchange for such Allowed Claim, and up to the full amount of such holder's Allowed OpCo Lender Secured Claim, (i) on the Effective Date, its Pro Rata share of the Sale Proceeds Distributable Consideration, if any, subject to the Waterfall Recovery Priority, *less* the Creditors' Committee Settlement Amount, (ii) its Pro Rata share of the Wind Down Co Interim Distributions (if any), and (iii) its Pro Rata share of  the Wind Down Reversion Amount (if any) prior to the dissolution of Wind Down Co.

(c)     **Impairment and Voting**:  Allowed OpCo Lender Secured Claims are Impaired. Holders of OpCo Lender Secured Claims are entitled to vote on this Plan.

**4.4**     ***Class 4:  OpCo General Unsecured Claims***.

(a)     **Treatment**:  Except to the extent that a holder of an Allowed OpCo General Unsecured Claim agrees to less favorable treatment, each holder of an Allowed OpCo General Unsecured Claim shall receive, in compromise, settlement, and release of and in exchange for such Allowed Claim, and up to the full amount of such holder's Allowed OpCo General Unsecured Claim, on or as soon as reasonably practicable after the reconciliation process for OpCo General Unsecured Claims is complete, its Pro Rata share of the Creditors' Committee Settlement Amount.

Notwithstanding anything herein to the contrary, pursuant to the terms of the Creditors' Committee Settlement, the holders of OpCo Lender Deficiency Claims shall not be entitled to a distribution under the Plan on account of each such OpCo Lender Deficiency Claim and each holder of an Allowed OpCo General Unsecured Claim's Pro Rata share of the Creditors' Committee Settlement shall be determined without regard to the OpCo Lender Deficiency Claims.

(b)     **Impairment and Voting**:  Allowed OpCo General Unsecured Claims are Impaired.  Holders of OpCo General Unsecured Claims are entitled to vote on this Plan.

**4.5**     ***Class 5:  HoldCo Lender Secured Claims***.

(a)     **Allowance**:  The HoldCo Lender Secured Claims shall be deemed Allowed on the Effective Date, consisting of (i) $262,678,270 in principal amount, plus (ii) accrued and unpaid interest, fees, expenses, and other obligations arising, due, or owing under or in connection with the HoldCo Loan Documents, in each case, to the extent permitted by the Bankruptcy Code and the DIP Order.

(b)     **Treatment**:  Except to the extent that a holder of an Allowed HoldCo Lender Secured Claim agrees to less favorable treatment, each holder of an Allowed HoldCo Lender Secured Claim shall receive, in compromise, settlement, and release of and in exchange for such Allowed Claim, and up to the full amount of such holder's Allowed HoldCo Lender Secured Claim, on the Effective Date, its Pro Rata share of any remaining Cash in the Credit Card Program Bank Account after all Credit Card Program Obligations are satisfied in full in Cash *less* the amount of Cash necessary to fund amounts to pay holders of Allowed (and reserve for Disputed) HoldCo Administrative Expense Claims.

(c)     **Impairment and Voting**:  Allowed HoldCo Lender Secured Claims are Impaired.  Holders of HoldCo Lender Secured Claims are entitled to vote on this Plan.

**4.6**     ***Class 6:  HoldCo General Unsecured Claims***.

(a)     **Treatment**:  All HoldCo General Unsecured Claims shall be cancelled, released, and extinguished as of the Effective Date, and will be of no further force or effect,

and holders of Allowed HoldCo General Unsecured Claims shall not receive any distribution on account of such Allowed HoldCo General Unsecured Claims.

(b)     **Impairment and Voting**:  Allowed HoldCo General Unsecured Claims are Impaired.  In accordance with section 1126(g) of the Bankruptcy Code, holders of Allowed HoldCo General Unsecured Claims are conclusively presumed to reject this Plan and are not entitled to vote to accept or reject this Plan, and the votes of such holders shall not be solicited with respect to HoldCo General Unsecured Claims.

**4.7**     *Class 7:  Intercompany Claims*.

(a)     **Treatment**:  On or after the Effective Date, all Intercompany Claims shall be reinstated or cancelled, released, and extinguished at the option of the Debtors or the Plan Administrator, as applicable; *provided* that no distribution shall be made on account of such Intercompany Claims.

(b)     **Impairment and Voting**:  Intercompany Claims are Impaired or Unimpaired. holders of Intercompany Claims are either (i) deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code or (ii) conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Intercompany Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders shall not be solicited with respect to Intercompany Claims.

**4.8**     *Class 8:  Subordinated Claims*.

(a)     **Treatment**:  All Subordinated Claims, if any, shall be cancelled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and holders of Allowed Subordinated Claims shall not receive any distribution on account of such Allowed Subordinated Claims.

(b)     **Impairment and Voting**:  Allowed Subordinated Claims are Impaired.  In accordance with section 1126(g) of the Bankruptcy Code, holders of Subordinated Claims are conclusively presumed to reject this Plan and are not entitled to vote to accept or reject this Plan, and the votes of such holders shall not be solicited with respect to Subordinated Claims.

**4.9**     *Class 9:  HoldCo Equity Interests*.

(a)     **Treatment**:  All HoldCo Equity Interests shall be cancelled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and holders of Allowed HoldCo Equity Interests shall not receive any distribution on account of such Allowed HoldCo Equity Interests.

(b)     **Impairment and Voting**:  Allowed HoldCo Equity Interests are Impaired.  In accordance with section 1126(g) of the Bankruptcy Code, holders of HoldCo Equity Interests are conclusively presumed to reject this Plan and are not entitled to vote to accept or reject this Plan, and the votes of such holders shall not be solicited with respect to HoldCo Equity Interests.

4.10    _Class 10:  Intercompany Interests_.

    (a)    **Treatment**:  On or after the Effective Date, all Intercompany Interests shall be reinstated or cancelled, released, and extinguished or receive such other tax-efficient treatment at the option of the Debtors or the Plan Administrator, as applicable; _provided_ that no distribution shall be made on account of such Intercompany Interests.

    (b)    **Impairment and Voting**:  Intercompany Interests are Impaired or Unimpaired. holders of Intercompany Interests are either (i) deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code or (ii) conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Intercompany Interests are not entitled to vote to accept or reject the Plan, and the votes of such holders shall not be solicited with respect to Intercompany Interests.

**ARTICLE V.**      **MEANS FOR IMPLEMENTATION.**

5.1    _No Substantive Consolidation_.

This Plan is being proposed as a joint chapter 11 plan of the Debtors for administrative purposes only and constitutes a separate chapter 11 plan for each Debtor.  This Plan is not premised upon the substantive consolidation of the Debtors with respect to the Classes of Claims or Interests set forth in this Plan.

5.2    _Compromise and Settlement of Claims, Interests, and Controversies_.

    (a)    _Settlement Generally_. Pursuant to section 1123(b)(3) of the Bankruptcy Code, and in consideration for the distributions and other benefits provided pursuant to this Plan, the provisions of this Plan shall constitute a good faith and integrated set of compromises of Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a creditor or an Interest holder may have with respect to any Allowed Claim or Interest or any distribution to be made on account of such Allowed Claim or Interest.  Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Allowed Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and holders of such Allowed Claims and Interests, and is fair, equitable, and reasonable.

    (b)    _Creditors' Committee Settlement_. Pursuant to sections 363 and 1123(b)(2) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to this Plan, including the Creditors' Committee Settlement Amount, this Plan shall constitute a good faith compromise of any Claims, Causes of Action, and controversies among the Debtors, the Prepetition Lenders, the DIP Lenders, and the Creditors' Committee (such parties, the "**Settlement Parties**" and such settlement, the "**Creditors' Committee Settlement**").  The following constitutes the terms of the Creditors' Committee Settlement:

        (i)    The OpCo Lenders shall contribute the Creditors' Committee Settlement Amount, on a Pro Rata basis, of the Sale Proceeds Distributable Consideration to which such OpCo Lenders otherwise would be entitled on the Effective Date.  The Creditors' Committee Settlement Amount shall constitute the sole source of recovery for holders of OpCo General Unsecured Claims under this Plan.

(ii)      The OpCo Lenders, OpCo Agent, HoldCo Lenders, and HoldCo Agent shall waive any entitlement to a recovery from the Creditors' Committee Settlement Amount on account of the OpCo Lender Deficiency Claims and the HoldCo Lender Deficiency Claims, but shall retain the OpCo Lender Deficiency Claims and HoldCo Lender Deficiency Claims and the right to vote any such Claims, as applicable.

(iii)      The Creditors' Committee Advisors are entitled to seek compensation for Fee Claims in accordance with Section 2.3 of this Plan, applicable orders of the Bankruptcy Court, and applicable Bankruptcy Code provisions; *provided* that, notwithstanding anything herein to the contrary, the Creditors' Committee Advisors shall not be entitled to payment by the Debtors or Wind Down Co, as applicable, of Fee Claims in excess of $3,400,000 in the aggregate.

(iv)      The OpCo Lenders, OpCo Agent, HoldCo Lenders, and HoldCo Agent shall waive any Adequate Protection Claims to which they are entitled under the Plan (solely with respect to Adequate Protection Claims under Paragraphs 10(a) and 10(c) of the Final DIP Order, but not with respect to Adequate Protection Claims under Paragraphs 10(b) and 10(d) of the Final DIP Order).

(v)      The Creditors' Committee and its members, in their capacity as members of the Creditors' Committee and individual capacity as creditors in the Chapter 11 Cases, agree to support the Disclosure Statement and Plan in their entirety, including the releases and exculpations set forth in Sections 10.6, 10.7, and 10.8 of this Plan. The Creditors' Committee shall provide a cover letter in support of the Plan for the Solicitation materials and encourage holders of OpCo General Unsecured Claims to vote in favor of the Plan. Further, each member of the Creditors' Committee, in its individual capacity as a creditor in the Chapter 11 Cases, shall (a) vote to accept the Plan, (b) not opt out of the releases set forth in Section 10.6(b) of the Plan, and (c) not object to the Disclosure Statement or Plan.

(vi)      Weil, Gotshal & Manges LLP, as counsel to the Debtors, shall hold a weekly call with McDermott Will & Schulte LLP, as counsel to the Creditors' Committee, through the Effective Date to discuss the Plan, closing of the WholeCo Sale Transaction, and the Wind Down. Further, the Debtors shall provide the Creditors' Committee with an estimate of the aggregate amount of DIP Claims prior to the Confirmation Hearing.

(vii)      The Debtors shall commence and use commercially reasonable efforts to facilitate the reconciliation and, if necessary, objection to Proofs of Claims submitted on, before, or after the Claims Bar Date prior to the Effective Date.

(viii)      Any Avoidance Actions against holders of General Unsecured will not be pursued to the extent such holders of General Unsecured Claims do not (a) vote to reject the Plan and (b) opt out of the releases set forth in Section 10.6(b) of the Plan.

(ix)      For the avoidance of doubt, the Creditors' Committee's Challenge Deadline (as defined in the Final DIP Order), solely to the extent extended pursuant to those certain *Stipulations and Agreed Orders Regarding Challenge Deadline* (Docket Nos. 403, 441, and 463), terminated as of the date of the filing of this Plan.

(x)      Following the Effective Date, Wind Down Co and the Post-Effective Date Debtors shall honor in the ordinary course of business any undisputed obligations under any executory contract or unexpired lease that has not been rejected or assumed and assigned to a third party. Wind Down Co and the Post-Effective Date Debtors shall honor such obligations with funds from the Counterparty Reserve, which shall be held in trust for the benefit of the counterparties to any executory contract or unexpired lease that Wind Down Co or the Post-Effective Date Debtors has not rejected or assumed and

assigned to a third party.  The Bankruptcy Court shall retain jurisdiction over any dispute between the Wind Down Co or the Post-Effective Date Debtors and any applicable counterparty.  In the event that any such obligation is disputed, the Wind Down Co or the Post-Effective Date Debtors, as applicable, and the counterparty shall use reasonable efforts to resolve such dispute; *provided* that if such dispute cannot be resolved between the parties, the counterparty or the Wind Down Co or the Post-Effective Date Debtors, as applicable, shall have the right to seek an order from the Bankruptcy Court determining the rights and obligations of the parties on emergency basis.

(xi)     With respect to those executory contracts and/or unexpired leases between any of the Debtors and (i) Crown Castle Towers and/or Crown Castle Fiber, LLC (together with their affiliates, "**Crown Castle**"), (ii) SBA Properties, LLC, SBA Towers II, LLC, SBA Towers, LLC, SBA 2012 TC Assets LLC, and/or SBA Towers IX, LLC, or (iii) any other counterparties agreed by the Debtors and the Creditors' Committee, in each case which are designated by the Debtors or Plan Administrator, as applicable, to be rejected, effective upon a date after the Effective Date, the Debtors or Plan Administrator, as applicable, shall reserve and hold in trust funds sufficient to pay all undisputed amounts arising under such contracts and/or leases from the Effective Date through the time in which the rejection of such contracts and/or leases becomes effective for the sole benefit of the above named entities. The Debtors and Crown Castle will work to reconcile any postpetition balances owed to Crown Castle as of the Confirmation Hearing prior to such hearing.

(xii)     *Claims Ombudsman*.  The Creditors' Committee may, with the consent of the Debtors or the Plan Administrator, as applicable, and the Requisite Prepetition Lenders, appoint a claims ombudsman (the "**Claims Ombudsman**") with certain powers and authority with respect to the reconciliation, allowance, and settlement of General Unsecured Claims as set forth herein and in the Claims Ombudsman Agreement.  The following sets forth the material terms and conditions of the appointment of the Claims Ombudsman, which are subject to the terms of the Claims Ombudsman Agreement:

A.  The Claims Ombudsman shall act for the benefit of and as a fiduciary to holders of General Unsecured Claims and shall have standing to be heard on issues related to General Unsecured Claims and distributions to holders thereof.

B.  The Claims Ombudsman shall be entitled to reasonable advance review and consultation regarding any objections, resolutions, and settlements with respect to General Unsecured Claims.

C.  The Plan Administrator and the Debtors, as applicable, shall cooperate in good faith with the Claims Ombudsman in connection with reconciliation of General Unsecured Claims and meet with the Claims Ombudsman once every two weeks, with the first such meeting occurring during the second full calendar week after the Effective Date.

D.  The Debtors and the Plan Administrator, as applicable, shall consult with the Claims Ombudsman regarding the reclassification of any Secured Claims, Administrative Expense Claims, Priority Tax Claims, Other Priority Claims, and Cure Amounts as General Unsecured Claims, pursuant to objection, settlement, or otherwise.

E.  The Debtors and the Plan Administrator, as applicable, shall consult with the Claims Ombudsman with respect to distributions to holders of Allowed OpCo General Unsecured Claims.

F.  The Debtors and the Plan Administrator, as applicable, shall use commercially reasonable efforts to:  (i) with respect to General Unsecured Claims other than Rejection Damages Claims, reconcile such Claims by the Effective Date; (ii) with respect to Rejection Damages Claims arising from executory contracts or unexpired leases rejected on or before the Effective Date, reconcile such

Claims within 180 days after the Effective Date; and (iii) with respect to Rejection Damages Claims arising from executory contracts or unexpired leases rejected after the Effective Date, reconcile such Claims within 90 days after the Rejection Outside Date.

G.   The Claims Ombudsman shall be entitled to a reasonable hourly fee, with the aggregate fees payable to the Claims Ombudsman, including the fees of any professionals or advisors retained by the Claims Ombudsman, not to exceed a total of $5,000 per month beginning with the first month after appointment of the Claims Ombudsman, which, for the avoidance of doubt, shall not be prior to the Effective Date.   For the avoidance of doubt, any fees or expenses incurred by any professionals or advisors retained by the Claims Ombudsman shall either be borne by the Claims Ombudsman or subject to the foregoing $5,000 cap (if the Claims Ombudsman seeks payment of such amounts from the Debtors or Wind Down Co, as applicable).

H.   The role and authority of the Claims Ombudsman shall terminate two months after the Plan Administrator files and serves the final notice of rejection of any executory contracts or unexpired leases of the Debtors.

### 5.3   *Sources of Consideration for Plan Distributions*.

The Debtors or Wind Down Co, as applicable, shall fund Plan Distributions and satisfy applicable Allowed Claims under this Plan using Cash on hand, the Sale Proceeds, and Cash proceeds from the sale or liquidation of any of the Debtors' assets that are not Transferred Assets, in accordance with the Plan Transactions Exhibit.

### 5.4   *Wind Down and Dissolution of the Debtors*.

(a)      In accordance with the Bidding Procedures, on the WholeCo Closing Date, the Debtors shall consummate the WholeCo Sale Transaction contemplated by the Successful Bid, and, among other things, the Transferred Assets under the WholeCo Purchase Agreement, as applicable, shall be transferred to and vest in the Successful Bidder free and clear of all Liens, Claims, charges, or other encumbrances pursuant to the WholeCo Purchase Agreement and WholeCo Sale Order (or such other applicable order of the Bankruptcy Court).

(b)      As of the Effective Date, the Plan Administrator shall have the authority and right on behalf of each of the Debtors and Post-Effective Date Debtors, without the need for Bankruptcy Court approval (unless otherwise indicated), to carry out and implement all provisions of the Plan, including to: (1) implement the Wind Down and administer the liquidation, dissolution, sale, and/or abandoning or similar action of the Debtors and their Estates and any assets held by the Wind Down Co or the Post-Effective Date Debtors, as applicable, on and after the Effective Date; (2) make Plan Distributions to holders of Allowed Claims in accordance with this Plan; (3) subject to the Wind Down Budget, retain professionals to assist in performing its duties under the Plan; (4) maintain the books, records, and accounts of the Debtors and Post-Effective Date Debtors; (5) complete and file, as necessary, all final or otherwise required federal, state, and local tax returns for the Debtors and the Post-Effective Date Debtors; (6) obtain, at the expense of the Wind Down Co and with funds from the Wind Down Fund (but in all respects subject to, and consistent with, the Wind Down Budget), commercially reasonable liability, errors and omissions, directors and officers, or other insurance coverage (including "tail" coverage) as the Plan Administrator deems reasonably necessary and appropriate; and (7) perform other duties and functions that are consistent with the implementation of the Plan or as otherwise set forth in Plan Administrator Agreement or the Wind Down Co Organizational Documents.

(c)     After the Effective Date, pursuant to the Plan, the Plan Administrator shall effectuate the Wind Down and shall sell, liquidate, and may operate, use, acquire, abandon, or dispose of property, and, subject to the consent of the Requisite Prepetition Lenders, compromise or settle any Claims, Interests, or Causes of Action remaining with the Post-Effective Date Debtors after consummation of the WholeCo Sale Transaction without approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

(d)     To the extent the Plan Administrator realizes any Wind Down Co Interim Proceeds, the Plan Administrator shall distribute such Wind Down Co Interim Proceeds pursuant to one or more Wind Down Co Interim Distributions to the Holders of OpCo Lender Secured Claims on a Pro Rata basis in accordance with the Plan Administrator Agreement, the Plan Transactions Exhibit, and the Wind Down Co Organizational Documents.

(e)     Any Plan Distributions made subsequent to the initial Plan Distributions made by the Debtors pursuant to Section 6.3 of the Plan shall be made by the Plan Administrator in an expeditious, timely, and orderly manner pursuant to the Plan and the Confirmation Order, and with respect to any Wind Down Co Interim Distributions, no less than once each quarter, if applicable, in accordance with the Plan Administrator Agreement, the Plan Transactions Exhibit, and the Wind Down Co Organizational Documents.

(f)     As of the Effective Date, the existing board of directors or managers, as applicable, of the Debtors shall be dissolved without any further action required on the part of the Debtors or the Debtors' officers, directors, managers, shareholders, or members, and any remaining officers, managers, or managing members of any Debtor shall be dismissed without any further action required on the part of any such Debtor, or the members of any Debtor.  Subject in all respects to the terms of this Plan, the Debtors shall be dissolved as soon as practicable on or after the Effective Date.  Following the Effective Date, the Plan Administrator, or one or more designees thereof, shall serve as the member(s) or director(s) of any such dissolved board in the event that the Plan Administrator deems doing so necessary at any time following the Effective Date in order to effectuate the provisions of this Plan.  The Plan Administrator shall be authorized to file on behalf of Wind Down Co, the Debtors, and the Post-Effective Date Debtors, as applicable, certificates of dissolution and any and all other corporate and company documents necessary to effectuate the Wind Down without further action under applicable law, regulation, order, or rule, including any action by the stockholders, members, board of directors, board of managers, or similar governing body of the Debtors.

(g)     On the Effective Date, Wind Down Co shall be funded with the Wind Down Fund in accordance with the Plan Transactions Exhibit.  The Plan Administrator shall effectuate the Wind Down with the Wind Down Fund, which shall be used in accordance with the Wind Down Budget and the Plan Transactions Exhibit.

(h)     All property of the Estates not distributed to the holders of Claims or Interests on the Effective Date, or transferred pursuant to the WholeCo Sale Documents, shall vest in or be transferred to the Wind Down Co or the Post-Effective Date Debtors, as applicable and in accordance with the Plan Transactions Exhibit, and managed and distributed by the Plan Administrator pursuant to the terms of the Wind Down Co Organizational Documents, if any, and shall be held in the name of the Wind Down Co or the Post-Effective Date Debtors, as applicable, and in accordance with the Plan Transactions Exhibit, free and clear of all Claims and Interests except for rights to such distributions provided to holders of Allowed Claims and Interests as provided in the Plan.  The Plan Administrator shall represent the Wind Down Co and shall, subject to the Wind Down Budget, have the right to retain the services of attorneys, accountants, and other professionals that the Plan Administrator determines, in its sole discretion, are necessary to assist the Plan Administrator in performing his or her duties.  The Plan Administrator shall, subject to the Wind

Down Budget, pay the reasonable fees and expenses of such professionals upon the monthly submission of statements to the Plan Administrator without further order of the Bankruptcy Court.  Any and all reasonable and documented costs and expenses incurred by the Plan Administrator in connection with the Wind Down shall be paid from the funds of the Wind Down Co, subject to the terms and conditions of the Wind Down Co Organizational Documents, the Plan Administrator Agreement, and the Wind Down Budget, as applicable.  The Plan Administrator shall be compensated and reimbursed (subject to, and consistent with, the Wind Down Budget) for reasonable costs and expenses as set forth in, and in accordance with, the Wind Down Co Organizational Documents and the Plan Administrator Agreement, as applicable.  In the event of the resignation or removal, liquidation, dissolution, death, or incapacity of the Plan Administrator, the Wind Down Co Organizational Documents shall set forth the process for appointing a new Plan Administrator.

(i)        On and after the Effective Date, the Plan Administrator shall be authorized to implement the Plan, and the Plan Administrator shall have the power and authority to take any reasonable action necessary to implement the Wind Down (subject, in all respects, to the Wind Down Budget).  Except to the extent necessary to (a) complete the Wind Down, (b) effectuate the WholeCo Sale Transaction, and/or (c) comply with the WholeCo Sale Documents (in each case, including changing the name of any Debtor entity, if necessary), from and after the Effective Date, the Plan Administrator (x) for all purposes, shall be deemed to have withdrawn the Debtors' business operations from any state or province in which the Debtors were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum, or take any other action to effectuate such withdrawal, and (y) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date.  The filing of the final monthly operating or disbursement report (for the month in which the Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Plan Administrator.

(j)        Upon a certification to be filed with the Bankruptcy Court by the Plan Administrator of all Plan Distributions having been made and completion of all its duties under the Plan and entry of a final decree closing the last of the Chapter 11 Cases, Wind Down Co shall be deemed to be dissolved or cancelled, as applicable, without any further action by the Plan Administrator and without the payment of any filing fees, or other similar amounts, other than the filing of any requisite certificates or documents with the secretary of state for the state in which the Debtors are formed or any other jurisdiction (if any).  In accordance with the Plan Transactions Exhibit, Plan Administrator Agreement and Wind Down Co Organizational Documents, the Plan Administrator shall distribute the Wind Down Reversion Amount to the OpCo Lenders before the dissolution of Wind Down Co.

(k)        **Establishment of Wind Down Co**.

(i)        In accordance with the Plan Transactions Exhibit, on or before the Effective Date, in furtherance of the WholeCo Sale Transaction, the Debtors, with the consent of the Requisite Prepetition Lenders, shall establish Wind Down Co.  The Debtors, with the consent of the Requisite Prepetition Lenders, shall determine the form of entity that Wind Down Co will be, *e.g.*, a corporation, a limited liability company, or a liquidating trust, among others, if applicable.  In the event that a Debtor is established or designated as Wind Down Co and in connection with such establishment or designation Wind Down Co issues equity interests (including, for the avoidance of doubt, to the Plan Administrator or to any liquidating trust), (1) the details of such equity interests, (2) the recipient or recipients of thereof, and (3) the exemptions to registration under (x) the Securities Act (and all rules and regulations promulgated thereunder) and (y) any other applicable securities laws related to any such issuance, shall in each case of (1) through (3), be set forth and more particularly described in the Plan Supplement.

(ii)    In the event it is determined that Wind Down Co shall take the form of a liquidating trust, (1) the terms of the liquidating trust shall be set forth in the Wind Down Co Organizational Documents, subject to the consent of the Requisite Prepetition Lenders, (2) Wind Down Co shall be structured to qualify as a "liquidating trust" within the meaning of section 301.7701-4(d) of the Treasury Regulations and in compliance with Rev. Proc. 94-45, 1994-2 C.B. 684, and, thus, as a "grantor trust" within the meaning of sections 671 through 679 of the Tax Code to the holders of Claims, consistent with the terms of the Plan, (3) the sole purpose of Wind Down Co shall be the liquidation and distribution of the assets transferred to Wind Down Co in accordance with section 301.7701-4(d) of the Treasury Regulations, including the resolution of Claims, with no objective to continue or engage in the conduct of a trade or business, (4) all parties (including the Debtors, the Post-Effective Date Debtors, the Plan Administrator, holders of Claims receiving an interest in Wind Down Co, and the Plan Administrator, as trustee of Wind Down Co) shall report consistently with such treatment (including the deemed receipt of the underlying assets, subject to applicable liabilities and obligations, by the holders of Allowed Claims, as applicable, followed by the deemed transfer of such assets to Wind Down Co), (5) all parties shall report consistently with the valuation of the assets transferred to Wind Down Co as determined by the Plan Administrator, as the trustee of Wind Down Co (or its designee), (6) the Plan Administrator, as the trustee of Wind Down Co, shall be responsible for filing returns for Wind Down Co as a grantor trust pursuant to section 1.671-4(a) of the Treasury Regulations, (7) the Plan Administrator, as the trustee of Wind Down Co, shall annually send to each holder of an interest in Wind Down Co a separate statement regarding the receipts and expenditures of Wind Down Co as relevant for U.S. federal income tax purposes and (8) all interests in Wind Down Co shall be non-certificated and non-transferable. Notwithstanding anything contained herein, in no event shall Wind Down Co be dissolved later than five years from the date Wind Down Co is established or formed unless the Bankruptcy Court, upon motion made within the six month period before such fifth year anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made at least six months before the end of the preceding extension), determines that a fixed period extension (not to exceed three years, together with any prior extensions, without a favorable private letter ruling from the IRS or an opinion of counsel satisfactory to the Plan Administrator, as trustee of Wind Down Co, that any further extension would not adversely affect the status of Wind Down Co as a liquidating trust for U.S. federal income tax purposes) is necessary to facilitate or complete the recovery on, and liquidation of, the Debtors or the Post-Effective Date Debtors.

(l)    Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Plan Administrator, as the trustee of Wind Down Co, of a private letter ruling if the Plan Administrator so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Plan Administrator), the Plan Administrator, as the trustee of Wind Down Co, may (x) timely elect to treat any portion of the assets of Wind Down Co allocable to Disputed Claims as a "disputed ownership fund" governed by section 1.468B-9 of the Treasury Regulations (and make any appropriate elections), (y) file such tax returns (including but not limited to the filing of a separate federal tax return for the "disputed ownership fund") and pay such taxes as may be required consistent with such treatment, and (z) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes.  If a "disputed ownership fund" election is made, all parties (including the Debtors, the Post-Effective Date Debtors, the Plan Administrator, holders of Claims, and the Plan Administrator, as the trustee of Wind Down Co) shall report for United States federal, state, and local income tax purposes consistently with the foregoing. The Plan Administrator, as the trustee of Wind Down Co, may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all returns filed for or on behalf of Wind Down Co for all taxable periods through the date on which final distributions are made. Wind Down Co shall, in an expeditious but orderly manner, liquidate and convert to Cash the assets transferred to Wind Down Co or the Post-Effective Date Debtors, as applicable, make timely distributions to the beneficiaries of Wind Down Co pursuant to the Plan, the Confirmation Order, the Plan Administrator Agreement and the Wind Down Co Organizational Documents and not unduly prolong its duration.

(m)     The Plan Transactions Exhibit, which is fully incorporated herein by reference, sets forth the material components of the transactions that are necessary or desirable to effectuate the transactions contemplated by this Plan, including the formation of Wind Down Co and any other Entities to be established or formed on or prior to the Effective Date, the vesting of assets in Wind Down Co and the Post-Effective Date Debtors, as applicable, and the other transaction steps necessary to consummate the Plan.  Notwithstanding anything herein to the contrary, to the extent anything in the Plan conflicts with the Plan Transactions Exhibit, the Plan Transactions Exhibit shall control in all respects.

### 5.5     *Effectuating Documents; Further Transactions*.

(a)     On or as soon as practicable after the Effective Date, the Debtors or the Plan Administrator, as applicable, shall take such reasonable actions as may be or become necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including (i) the execution and delivery of the Wind Down Co Organizational Documents, (ii) the execution and delivery of the appropriate agreements or other documents of merger, consolidation, restructuring, financing, conversion, disposition, transfer, dissolution, or liquidation to give effect to the transactions contemplated by the Plan (including the Wind Down) and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may determine, (iii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any Asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms to which the applicable parties agree, (iv) the execution, delivery, and/or filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution; provided that such limitation shall only apply to the initial holder of equity interests, and not to any purchaser, transferee, or assignee of all or a portion of such equity interests), including pursuant to applicable state law, (v) the issuance of securities, all of which shall be authorized and approved in all respects, in each case, without further action being required under applicable law, regulation, order, or rule, (vi) the execution and delivery of any documents contemplated by the Plan Transactions Exhibit and the consummation of any transactions contemplated thereby, and (vii) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law or to reincorporate in another jurisdiction.

(b)     Each officer, manager, limited partner, or member of the board of directors of the Debtors is (and each officer, manager, limited partner, or member of the board of directors of Wind Down Co or the Post-Effective Date Debtors, as applicable, and the Plan Administrator shall be) authorized and directed to issue, execute, deliver, file, or record such contracts, securities, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, all of which shall be authorized and approved in all respects, in each case, without the need for any approvals, authorization, consents, or any further action required under applicable law, regulation, order, or rule (including any action by the stockholders, limited partners, directors, or managers of the Debtors or Wind Down Co) except for those expressly required pursuant to the Plan.

(c)     All matters provided for herein (including as provided in the Plan Transactions Exhibit) involving the corporate structure of the Debtors, Wind Down Co, or the Post-Effective Date Debtors, to the extent applicable, or any corporate or related action required by the Debtors, Wind Down Co, or the Post-Effective Date Debtors in connection herewith shall be deemed to have occurred, and shall be in effect, without any requirement of further action by the stockholders, members, limited partners, directors, or managers of the Debtors, Wind Down Co, or the Post-Effective Date Debtors, as applicable, and with like effect as though such action had been taken unanimously by the stockholders, members, limited partners, directors, managers, or officers, as applicable, of the Debtors, Wind Down Co, or the Post-Effective Date Debtors.

**5.6** _**Cancellation of Existing Securities and Agreements**_.

(a)     Except for the purpose of evidencing a right to a distribution under this Plan and except as otherwise set forth in this Plan, on the Effective Date, all agreements, instruments, and other documents evidencing or issued pursuant to or in connection with the OpCo Credit Agreement, the HoldCo Credit Agreement, or any indebtedness or other obligations thereunder, and any Interest (except Intercompany Interests, if applicable), and any rights of any holder in respect thereof, shall be deemed cancelled and of no force or effect, without any need for a holder of OpCo Lender Secured Claims, HoldCo Lender Secured Claims or any Interest (except Intercompany Interests, if applicable) to take further action with respect thereto, and the obligations of the Debtors and the Agents thereunder shall be deemed fully satisfied, and released.  For the avoidance of doubt, except as otherwise provided in this Plan, the Agents shall have no further duties or obligations under the OpCo Loan Documents and HoldCo Loan Documents, as applicable.

(b)     Notwithstanding such cancellation, the OpCo Loan Documents and the HoldCo Loan Documents shall continue in effect to the extent necessary (i) to allow the holders of Claims arising thereunder to receive Plan Distributions under the Plan, (ii) to allow the Debtors, the Plan Administrator, Wind Down Co, and the Agents (as applicable) to make post-Effective Date Plan Distributions or take such other action pursuant to this Plan on account of such Claims, and to otherwise exercise their rights and discharge their obligations relating to the Interests of the holders of such Claims, (iii) to allow holders of Claims to retain their respective rights and obligations vis-à-vis other holders of Claims pursuant to any applicable loan documents, (iv) to allow the Agents to enforce their rights, claims, and interests vis-à-vis any party other than the Debtors, Wind Down Co, or the Post-Effective Date Debtors (except as otherwise set forth in this Plan), including any rights with respect to priority of payment, (v) to preserve any rights of the Agents to payment of fees, costs, expenses, and indemnification obligations, including as against any money or property distributable to lenders, under the OpCo Loan Documents and HoldCo Loan Documents, as applicable, including any rights to priority of payment, (vi) to allow the Agents to enforce any obligations owed to them under this Plan, (vii) to allow the Agents to exercise rights and obligations relating to the interests of themselves or the lenders under the OpCo Loan Documents and HoldCo Loan Documents, as applicable, (viii) to permit the Agents to perform any function necessary to effectuate the foregoing, and (ix) to allow the Agents to appear in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court relating to the OpCo Loan Documents or HoldCo Loan Documents; _provided_ that nothing in this Section 5.6 shall affect the injunctions and/or releases of Claims pursuant to the Bankruptcy Code, the Confirmation Order, or this Plan, or result in any liability or expense to the Debtors, Wind Down Co, or the Post-Effective Date Debtors (except as otherwise set forth in this Plan).

(c)     Notwithstanding the foregoing, any provision in any document, instrument, lease, or other agreement that causes or effectuates, or purports to cause or effectuate, a default, termination, waiver, or other forfeiture of, or by, the Debtors as a result of the cancellations, terminations, satisfaction, or releases provided for in this Plan shall be deemed null and void and shall be of no force and effect.  Nothing contained herein shall be deemed to cancel, terminate, or release the obligation of the Debtors or any of their counterparties under any executory contract or lease to the extent such executory contract or lease has been assumed by the Debtors pursuant to a Final Order of the Bankruptcy Court or hereunder.

**5.7** _**Letters of Credit**_.

Any Letters of Credit that remain outstanding on the Effective Date shall be (i) cash collateralized by the Debtors, Wind Down Co, or the Post-Effective Date Debtors, as applicable (at an amount acceptable to the applicable issuer, the Debtors or the Plan Administrator, and the Requisite Prepetition Lenders), (ii) terminated, cancelled, or returned undrawn to the applicable issuer (with the consent of the Requisite Prepetition Lenders), or (iii) otherwise addressed through arrangements acceptable to the applicable issuer, the Debtors or the Plan Administrator, and the Requisite Prepetition Lenders.

### 5.8    *Cancellation of Liens*.

Except as otherwise specifically provided in this Plan, upon the payment in full in Cash of an Other Secured Claim, any Lien securing an Other Secured Claim that is paid in full, in Cash, shall be deemed released, and the holder of such Other Secured Claim shall be authorized and directed to release any collateral or other property of the Debtors or the Post-Effective Date Debtors (including any Cash collateral) held by such holder and to take such actions as may be requested by the Debtors or the Plan Administrator, as applicable, to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases as may be requested by the Debtors or the Plan Administrator, as applicable.

### 5.9    *Intercompany Interests; Corporate Reorganization*.

To the extent reinstated under this Plan, on the Effective Date, the Intercompany Interests (i) shall receive no recovery or distribution and (ii) shall be reinstated without the need for any further corporate action or approval of any board of directors, board of managers, managers, management, or stockholders of any Debtor, Wind Down Co, or the Post-Effective Date Debtors, as applicable, and the certificates and all other documents representing the Intercompany Interests shall be deemed to be in full force and effect.

### 5.10    *Preservation of Causes of Action*

(a)      In accordance with section 1123(b) of the Bankruptcy Code, but subject in all respects to Article X of the Plan, Wind Down Co, the Post-Effective Date Debtors, and the Plan Administrator, on behalf of Wind Down Co, as applicable, shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Retained Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action and notwithstanding the rejection of any executory contract or unexpired lease during the Chapter 11 Cases or pursuant to the Plan, other than Avoidance Actions and the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, including in Article X of the Plan, which shall be deemed released and waived as of the Effective Date.

(b)      The Plan Administrator may pursue such Retained Causes of Action in accordance with the best interests of Wind Down Co.  The Plan Administrator shall retain and may exclusively enforce any and all such Retained Causes of Action.  The Plan Administrator shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Retained Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

(c)      No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Causes of Action against it as any indication that Wind Down Co, the Post-Effective Date Debtors or the Plan Administrator shall not pursue any and all available Causes of Action against such Entity, except to the extent such Causes of Action are assigned or transferred to the Successful Bidder or their designee(s) in accordance with the WholeCo Sale Documents or as otherwise expressly provided in this Plan, including Article V and Article X of this Plan.  Unless any such Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, assigned, or transferred to the Successful Bidder or their designee(s) in accordance with the WholeCo Sale Documents, or settled in the Plan or a Final Order, all such Causes of Action are expressly reserved by Wind Down Co or the Post-Effective Date Debtors, as applicable, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the confirmation or consummation of the Plan.

### 5.11     *Subordination Agreements*.

Pursuant to section 510(a) of the Bankruptcy Code, all subordination agreements governing Claims or Interests, if any, shall be enforced in accordance with such agreement's terms.

### 5.12     *Nonconsensual Confirmation*.

The Debtors intend to undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code as to any Classes that reject or are deemed to reject the Plan.

### 5.13     *Closing of Chapter 11 Cases*.

After an Estate has been fully administered, the Plan Administrator shall seek authority from the Bankruptcy Court to close the applicable Chapter 11 Case(s) in accordance with the Bankruptcy Code and Bankruptcy Rules; *provided* that, as of the Effective Date, the Plan Administrator may submit separate orders to the Bankruptcy Court under certification of counsel closing individual Chapter 11 Cases and changing the caption of the Chapter 11 Cases accordingly; *provided, further*, that matters concerning Claims may be heard and adjudicated in one of the Debtors' Chapter 11 Cases that remains open regardless of whether the applicable Claim is against a Debtor in a Chapter 11 Case that is closed.

### 5.14     *Notice of Effective Date*.

As soon as practicable, but not later than three Business Days following the Effective Date, the Post-Effective Date Debtors or the Plan Administrator, as applicable, shall file a notice of the occurrence of the Effective Date with the Bankruptcy Court.

## ARTICLE VI.     DISTRIBUTIONS.

### 6.1     *Distributions Generally*.

One or more Disbursing Agents shall make all Plan Distributions to the appropriate holders of Allowed Claims in accordance with the terms of this Plan.

### 6.2     *No Postpetition Interest on Claims*.

Except as otherwise specifically provided for in this Plan, the Confirmation Order, or another order of the Bankruptcy Court (including the Final DIP Order), postpetition interest shall not accrue or be paid on any other Claims, and no holder of any other Claims shall be entitled to interest accruing on such Claims on or after the Petition Date.

### 6.3     *Date of Distributions*.

(a)     In accordance with the Plan Transactions Exhibit, unless otherwise provided in this Plan, Plan Distributions and deliveries to be made under this Plan shall be made on the Effective Date or as soon thereafter as is practicable.  In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims, Plan Distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII hereof.

(b)        The Plan Administrator shall reserve from the Wind Down Fund (i) an amount sufficient to pay holders of any Disputed Administrative Expense Claims, Disputed Other Secured Claims, Disputed Other Priority Claims and Disputed Priority Tax Claims the amount such holders would be entitled to receive under the Plan if such Claims were to become Allowed Claims and (ii) with respect to Claims not yet subject to an applicable bar date as of the Effective Date, an amount based on a good faith estimate of such Claims by the Debtors or the Plan Administrator, as applicable.   After the resolution of all such Disputed and other Claims referenced in the foregoing (i) and (ii), the Plan Administrator shall pay any amounts that were reserved for such Claims that do not become Allowed Claims to holders of Allowed Claims and Interests subject to the Waterfall Recovery Priority.

(c)        The Plan Administrator shall distribute the Wind Down Reversion Amount to holders of Allowed Claims in accordance with <u>Article IV</u> of the Plan, the Plan Administrator Agreement, and the Wind Down Co Organizational Documents as soon as reasonably practicable following completion of the Wind Down.

### 6.4     *Distribution Record Date*.

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtors or their respective agents shall be deemed closed for purposes of determining whether a holder of such a Claim or Interest is a record holder entitled to Plan Distributions under the Plan, and there shall be no further changes in the record holders or the permitted designees of any such Claims or Interests.   The Debtors and the Plan Administrator, as applicable, shall have no obligation to recognize any transfer or designation of such Claims or Interests occurring after the close of business on the Distribution Record Date.   In addition, with respect to payment of any Cure Amounts or assumption disputes, neither the Debtors nor the Disbursing Agent shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable executory contract or unexpired lease as of the close of business on the Distribution Record Date, even if such non-Debtor party has sold, assigned, or otherwise transferred its Claim for a Cure Amount.

### 6.5     *Distributions after Effective Date*.

Plan Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

### 6.6     *Disbursing Agent*.

Except as otherwise set forth in this Plan, all Plan Distributions under this Plan shall be made by the applicable Disbursing Agent on and after the Effective Date as provided herein.   The applicable Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties.   The Debtors or the Plan Administrator, as applicable, shall use all commercially reasonable efforts to provide the Disbursing Agent (if other than the Debtors or the Plan Administrator) with the amounts of Claims and the identities and addresses of holders of Claims, in each case, as set forth in the Debtors', Wind Down Co's, or the Post-Effective Date Debtors', as applicable, books and records.   The Debtors or the Plan Administrator, as applicable, shall cooperate in good faith with the applicable Disbursing Agent (if other than the Debtors or the Plan Administrator) to comply with the reporting and withholding requirements outlined in <u>Section 6.16</u> of the Plan.

**6.7**    *Rights and Powers of Disbursing Agent*.

(a)    **Powers of Disbursing Agent**.  Each Disbursing Agent shall be empowered to:  (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under this Plan; (ii) make all applicable distributions or payments provided for under this Plan; (iii) employ professionals to represent it with respect to its responsibilities; and (iv) exercise such other powers (a) as may be vested in the applicable Disbursing Agent by order of the Bankruptcy Court (including any Final Order issued after the Effective Date) or pursuant to this Plan, the Wind Down Co Organizational Documents, or (b) as deemed by the applicable Disbursing Agent to be necessary and proper to implement the provisions of this Plan.

(b)    **Expenses Incurred on or After the Effective Date**.  Except as otherwise ordered by the Bankruptcy Court and subject to the written agreement of the Plan Administrator and the Wind Down Budget, the amount of any reasonable and documented fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable and documented compensation and expense reimbursement Claims (including for reasonable and documented attorneys' and other professional fees and expenses) made by the Disbursing Agent shall be paid in Cash.

**6.8**    *Delivery of Distributions*.

(a)    Subject to Section 6.8(b) of this Plan, the applicable Disbursing Agent shall issue, or cause to be issued, the applicable consideration under this Plan and, subject to Bankruptcy Rule 9010, shall make all Plan Distributions to any holder of an Allowed Claim as and when required by this Plan at:  (i) the address of such holder on the books and records of the Debtors or their agents; or (ii) at the address in any written notice of address change delivered to the Debtors or the applicable Disbursing Agent, including any addresses included on any transfers of Claim filed pursuant to Bankruptcy Rule 3001.  In the event that any Plan Distribution to any holder is returned as undeliverable, no Plan Distribution or payment to such holder shall be made unless and until the applicable Disbursing Agent has been notified of the then-current address of such holder, at which time or as soon thereafter as reasonably practicable such distribution shall be made to such holder without interest.

(b)    Notwithstanding the foregoing, the Debtors shall deposit on or before the Effective Date all Plan Distributions of Cash on account of outstanding DIP Claims (if any) with the DIP Agent for distributions to DIP Lenders in accordance with the DIP Documents and OpCo Lender Secured Claims with the OpCo Agent for distribution to holders of OpCo Lender Secured Claims in accordance with the OpCo Loan Documents, which shall be deemed completed when deposited with the DIP Agent or OpCo Agent, as applicable.  All Plan Distributions of Cash on account of HoldCo Lender Secured Claims shall be deposited with the HoldCo Agent for distribution to holders of HoldCo Lender Secured Claims in accordance with the terms of the HoldCo Loan Documents, and shall be deemed completed when deposited with the HoldCo Agent.

(c)    All Plan Distributions other than of Cash on account of outstanding DIP Claims, OpCo Lender Secured Claims or HoldCo Lender Secured Claims, if any, may, with the consent of the DIP Agent, OpCo Agent or HoldCo Agent, as applicable, be made by the Disbursing Agent directly to holders of DIP Claims, OpCo Lender Secured Claims or HoldCo Lender Secured Claims, as applicable, in accordance with the terms of this Plan, DIP Credit Agreement, OpCo Credit Agreement, and the HoldCo Credit Agreement, as applicable.

(d)    To the extent the DIP Agent, OpCo Agent or HoldCo Agent, as applicable, effectuates, or is requested to effectuate, any Plan Distributions hereunder, the DIP Agent, OpCo Agent or HoldCo Agent, as applicable, shall be deemed a "Disbursing Agent" for purposes of this Plan.

### 6.9    *Unclaimed Property*.

(a)    If, at the expiration of 45 days from the date of a Plan Distribution, such distribution has not been claimed, then such distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and shall revert to Wind Down Co, and all claims of any other Person (including the holder of a Claim in the same Class) to such distribution shall be cancelled, released, and forever barred. The Plan Administrator and the Disbursing Agent (if other than the Plan Administrator) shall have no obligation to attempt to locate any holder of an Allowed Claim other than by reviewing the Debtors' books and records and the Bankruptcy Court's filings.

(b)    For the avoidance of doubt, a Plan Distribution shall be deemed unclaimed if a holder has not:  (i) accepted a particular Plan Distribution or, in the case of Plan Distributions made by check, negotiated such check; (ii) given notice to the Debtors or the Plan Administrator, as applicable, of an intent to accept a particular Plan Distribution; (iii) responded to the Debtors' or Plan Administrator's, as applicable, requests for information necessary to facilitate a particular Plan Distribution (including, but not limited to, the provision of the appropriate tax form (Form W-9 or, if applicable, Form W-8) within the time period specified in Section 6.16(a)); or (iv) taken any other action necessary to facilitate such distribution.

### 6.10    *Satisfaction of Claims*.

Unless otherwise provided herein, any Plan Distributions and deliveries to be made on account of Allowed Claims under this Plan shall be in complete and final satisfaction and settlement of such Allowed Claims.

### 6.11    *Manner of Payment under Plan*.

Except as specifically provided herein, at the option of the Debtors or the Plan Administrator, as applicable, any Cash payment to be made under this Plan may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtors.

### 6.12    *Fractional Shares and De Minimis Cash Distributions*.

The Plan Administrator or the Disbursing Agent (if other than the Plan Administrator) shall not have any obligation to make a Plan Distribution that is less than $100.00 in Cash.  Cash that is not distributed in accordance with this Section 6.12 shall be returned to, and ownership thereof shall vest in, Wind Down Co.

### 6.13    *No Distribution in Excess of Amount of Allowed Claim*.

Notwithstanding anything to the contrary in this Plan, no holder of an Allowed Claim shall receive, on account of such Allowed Claim, Plan Distributions in excess of the Allowed amount of such Claim (plus any postpetition interest on such Claim solely to the extent permitted by Sections 4.3 and 4.5 of this Plan).

### 6.14    *Allocation of Distributions Between Principal and Interest*.

Except as otherwise required by law (as reasonably determined by the Debtors or the Plan Administrator, as applicable), Plan Distributions with respect to an Allowed Claim shall be allocated first to the principal portion of such Allowed Claim (as determined for United States federal income tax purposes) and, thereafter, to the remaining portion of such Allowed Claim, if any.

     6.15     *__Setoffs and Recoupments__*.

The Debtors, Wind Down Co, or the Post-Effective Date Debtors, as applicable, or such entity's designee (including the applicable Disbursing Agent) may, but shall not be required to, set off or recoup against any Claim (except any DIP Claim, OpCo Lender Secured Claim, HoldCo Lender Secured Claim, OpCo Lender Deficiency Claim, or HoldCo Lender Deficiency Claim), and any Plan Distribution to be made on account of such Claim, any and all claims, rights, and Causes of Action of any nature whatsoever that the Debtors, Wind Down Co, or the Post-Effective Date Debtors, as applicable, may have against the holder of such Claim pursuant to the Bankruptcy Code or applicable non-bankruptcy law; *provided* that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by a Debtor, Wind Down Co, or Post-Effective Date Debtor, as applicable, or its successor of any claims, rights, or Causes of Action that a Debtor, Wind Down Co, or Post-Effective Date Debtor, as applicable, or its successor or assign may possess against the holder of such Claim.

     6.16     *__Withholding and Reporting Requirements__*.

(a)     In connection with this Plan, any Person issuing any instrument, or making any Plan Distribution or payment in connection therewith, shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority.  In the case of a non-Cash Plan Distribution, if any, that is subject to withholding, the distributing party may require the intended recipient of such Plan Distribution to provide the withholding agent with an amount of Cash sufficient to satisfy such withholding tax as a condition to receiving such Plan Distribution or withhold an appropriate portion of such distributed property, and either (i) sell such withheld property to generate Cash necessary to pay over the withholding tax (or reimburse the distributing party for any advance payment of the withholding tax) or (ii) pay the withholding tax using its own funds and retain such withheld property.  The distributing party shall have the right not to make a Plan Distribution under this Plan until its withholding or reporting obligation is satisfied pursuant to the preceding sentences.  Any amounts withheld pursuant to this Plan shall be deemed to have been distributed to and received by the applicable recipient for all purposes of this Plan.  Any party entitled to receive any property as an issuance or Plan Distribution under this Plan shall deliver to the withholding agent or such other Person designated by the Plan Administrator, as applicable, a Form W-8, Form W-9, and/or any other forms or documents, as applicable, requested by the Plan Administrator to reduce or eliminate any required federal, state, or local withholding.  If the party entitled to receive such property as an issuance or Plan Distribution fails to comply with any such request for a one 180 day period beginning on the date after the date such request is made, the amount of such issuance or Plan Distribution shall irrevocably revert to Wind Down Co, as applicable, and any Claim in respect of such Plan Distribution under this Plan shall be forever barred from assertion against Wind Down Co, the Post-Effective Date Debtors,  or their respective property.

(b)     Notwithstanding the above, each holder of an Allowed Claim or Interest that is to receive a Plan Distribution under this Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such holder by any governmental unit, including income, withholding, and other tax obligations, on account of such Plan Distribution.

## ARTICLE VII.     PROCEDURES FOR DISPUTED CLAIMS.

     7.1     *__Allowance of Claims__*.

Except as expressly provided in this Plan (including as provided in Sections 4.3 and 4.5 of this Plan) or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed pursuant to this Plan or a Final Order, including the Confirmation Order (when it becomes a Final Order), Allowing

such Claim.  On and after the Effective Date, each of the Debtors and the Plan Administrator, as applicable, shall have and retain any and all rights and defenses with respect to any Claim immediately before the Effective Date, except for such rights and defenses that constitute Transferred Assets assigned or transferred to the Successful Bidder or its designee(s) in accordance with the WholeCo Sale Documents.

### 7.2    *Objections to Claims*.

Except insofar as a Claim is Allowed under this Plan, the Debtors or the Plan Administrator, as applicable, shall exclusively be entitled to object to all Claims.  Except as otherwise expressly provided in this Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Plan Administrator shall have the authority (i) to file, withdraw, or litigate to judgment objections to Claims, (ii) to settle or compromise any such Claim that is disputed without any further notice to or action, order, or approval by the Bankruptcy Court, and (iii) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

### 7.3    *Estimation of Claims*.

The Debtors or the Plan Administrator, as applicable, may at any time request that the Bankruptcy Court estimate any Disputed Claim or Disputed Interest that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection.  In the event that the Bankruptcy Court estimates any Disputed, contingent, or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim for all purposes under this Plan (including for purposes of Plan Distributions), as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation of the amount of such Claim, the Debtors or the Plan Administrator, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.  Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such holder has filed a motion requesting the right to seek such reconsideration on or before 21 days after the date on which such Claim is estimated.

### 7.4    *Adjustment to Claims Register Without Objection*.

Any duplicate Claim or Interest, or any Claim or Interest that has been paid or satisfied, is a duplicate, or has been amended or superseded, may be adjusted or expunged on the Claims Register by the Debtors or the Plan Administrator, as applicable, without a Claims objection having to be filed, and without any further notice or action, order, or approval of the Bankruptcy Court.

### 7.5    *Time to File Objections to Claims*.

(a)    Except as set forth in subparagraph (b) of this Section 7.5, any objections to a Claim shall be filed on or before the date that is the later of (i) 45 days after the Effective Date and (ii) such later date as may be fixed by the Bankruptcy Court with the consent of Requisite Prepetition Lenders, after notice and a hearing, upon a motion by the Plan Administrator that is filed before the date that is 45 days after the Effective Date.

(b)    Any objections to an Administrative Expense Claim or a Claim arising from the rejection of an executory contract or unexpired lease shall be filed on or before the date that is the later of (i) 45 days

after such Claim is filed and (ii) such later date as may be fixed by the Bankruptcy Court with the consent of Requisite Prepetition Lenders, after notice and a hearing, upon a motion by the Debtors or the Plan Administrator, as applicable.

### 7.6     _Disallowance of Claims_.

Any Claims held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and holders of such Claims may not receive any Plan Distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered, and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Debtors, Wind Down Co, or the Post-Effective Date Debtors, as applicable.

### 7.7     _Amendments to Claims_.

On or after the Effective Date, except as provided in this Plan or the Confirmation Order, a Claim may not be filed or amended without the prior authorization of the Bankruptcy Court and the Plan Administrator.  Absent such authorization, any new or amended Claim filed after the Claims Bar Date and Administrative Expense Claims Bar Date, as applicable, shall be deemed Disallowed in full and expunged without any further notice to or action, order, or approval of the Bankruptcy Court.

### 7.8     _No Distributions Pending Allowance_.

If an objection, motion to estimate, or other challenge to a Claim is filed, no payment or Plan Distribution provided under this Plan shall be made on account of such Claim unless and until (and only to the extent that) such Claim becomes an Allowed Claim.

### 7.9     _Distributions After Allowance_.

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, Plan Distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of this Plan.  As soon as practicable after the date on which the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the applicable Disbursing Agent shall provide to the holder of such Allowed Claim the Plan Distribution (if any) to which such holder is entitled under this Plan as of the Effective Date, without any interest to be paid on account of such Claim unless required by the Bankruptcy Code.

### 7.10     _Claims Resolution Procedures Cumulative_.

All of the Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved in accordance with this Plan or any mechanism approved by the Bankruptcy Court.

## ARTICLE VIII.     EXECUTORY CONTRACTS AND UNEXPIRED LEASES.

### 8.1     _General Treatment_.

(a)     As of and subject to the occurrence of the Effective Date, all executory contracts and unexpired leases to which any of Debtor is a party shall be deemed rejected unless such contract or lease

(i) was previously assumed or rejected by the Debtors pursuant to an order of the Bankruptcy Court, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) is the subject of a motion to assume or reject filed by the Debtors on or before the Confirmation Date, (iv) is identified in Section 8.6 of this Plan, (v) is identified for assumption on the Schedule of Assumed Contracts included in the Plan Supplement, (vi) is identified for rejection on the Schedule of Rejected Contracts included in the Plan Supplement, or (vii) is the subject of a pending Assumption Dispute.

(b)     For each executory contract and unexpired lease identified in the Schedule of Assumed Contracts or the Schedule of Rejected Contracts, the effective date of rejection or assumption, as applicable, shall be the Effective Date unless otherwise specified.

(c)     Subject to the occurrence of the Effective Date, with respect to executory contracts, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumptions, assumptions and assignments, or rejections provided for in the Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code and a determination by the Bankruptcy Court that Wind Down Co or the Post-Effective Date Debtors, as applicable, have provided adequate assurance of future performance under such assumed executory contracts and unexpired leases.  Each executory contract and unexpired lease assumed or assumed and assigned pursuant to the Plan shall vest in and be fully enforceable by Wind Down Co or the Post-Effective Date Debtors, as applicable, in accordance with its terms, except as modified by the provision of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption or applicable law.

(d)     To the maximum extent permitted by law, to the extent any provision in any executory contract or unexpired lease assumed or assumed and assigned pursuant to this Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such executory contract or unexpired lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by this Plan shall not entitle the non-Debtor party thereto to terminate such executory contract or unexpired lease or to exercise any other default-related rights with respect thereto.

(e)     Notwithstanding anything to the contrary in this Plan, the Debtors, Wind Down Co, the Post-Effective Date Debtors, and the Plan Administrator from time to time may alter, amend, modify, or supplement the Schedule of Assumed Contracts and Schedule of Rejected Contracts (and any notices related to either of the foregoing schedules) to add or remove any executory contract or unexpired lease, and solely with respect to any cure payments to be made after the Effective Date by Wind Down Co, subject to the Wind Down Budget; *provided* no executory contracts or unexpired leases may be rejected after the Rejection Outside Date.

(f)     Nothing in this Section 8.1 shall affect the executory contracts and unexpired leases that are to be assumed and assigned under the WholeCo Sale Order.

### *8.2     Determination of Cure Amounts and Deemed Consent.*

(a)     The Debtors shall file, as part of the Plan Supplement, the Schedule of Assumed Contracts. At least 14 days before the Confirmation Hearing, the Debtors shall serve a notice on parties to executory contracts or unexpired leases to be assumed or assumed and assigned reflecting the Debtors' intention to potentially assume or assume and assign the contract or lease in connection with this Plan and, where applicable, setting forth the proposed Cure Amount (if any).  **Any objection by a counterparty to an executory contract or unexpired lease to the proposed assumption, assumption and assignment, or related Cure Amount must be filed, served, and actually received by the Debtors within 10 days of the service of the assumption notice, or such shorter period as agreed to by the parties or authorized**

**by the Bankruptcy Court**. Any counterparty to an executory contract or unexpired lease that does not timely object to the notice of the proposed assumption of such executory contract or unexpired lease shall be deemed to have assented to assumption of the applicable executory contract or unexpired lease notwithstanding any provision thereof that purports to (i) prohibit, restrict, or condition the transfer or assignment of such contract or lease, (ii) terminate or modify, or permit the termination or modification of, a contract or lease as a result of any direct or indirect transfer or assignment of the rights of any Debtor under such contract or lease or a change, if any, in the ownership or control to the extent contemplated by this Plan, (iii) increase, accelerate, or otherwise alter any obligations or liabilities of any Debtor, Wind Down Co, or Post-Effective Date Debtor, as applicable, under such executory contract or unexpired lease, or (iv) create or impose a Lien upon any property or Asset of any Debtor, Wind Down Co, or Post-Effective Date Debtor, as applicable. Each such provision shall be deemed to not apply to the assumption of such executory contract or unexpired lease pursuant to this Plan and counterparties to assumed executory contracts or unexpired leases that fail to object to the proposed assumption in accordance with the terms set forth in this Section 8.2(a), shall forever be barred and enjoined from objecting to the proposed assumption or to the validity of such assumption (including with respect to any Cure Amounts or the provision of adequate assurance of future performance), or taking actions prohibited by the foregoing or the Bankruptcy Code on account of transactions contemplated by this Plan.

(b)     If there is an Assumption Dispute pertaining to assumption of an executory contract or unexpired lease (other than a dispute pertaining to a Cure Amount), such dispute shall be heard by the Bankruptcy Court prior to such assumption being effective; *provided* that the Debtors or the Plan Administrator, or the assignee of such executory contract or unexpired lease, as applicable, may settle any dispute regarding the Cure Amount or the nature thereof without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

(c)     To the extent an Assumption Dispute relates solely to the Cure Amount, the Debtors may assume and/or assume and assign the applicable executory contract or unexpired lease prior to the resolution of the Assumption Dispute; *provided* that the Debtors or Wind Down Co, as applicable, reserve Cash in an amount sufficient to pay the full amount reasonably asserted as the required cure payment by the non-Debtor party to such executory contract or unexpired lease (or such smaller amount as may be fixed or estimated by the Bankruptcy Court or otherwise agreed to by such non-Debtor party and Wind Down Co), and solely with respect to any such reserve for cure payments to be made after the Effective Date by Wind Down Co, subject to the Wind Down Budget.

(d)     Subject to Section 8.1 above, and notwithstanding anything to the contrary herein, the terms of the Bidding Procedures, WholeCo Sale Documents, and any other related orders of the Bankruptcy Court, to the extent inconsistent with the terms of this Plan, shall govern the assignment of unexpired leases and assumption and assignment of executory contracts with respect to the WholeCo Sale Transaction; *provided* that if the Bidding Procedures, WholeCo Sale Documents, and any other related order of the Bankruptcy Court do not provide for the assumption of an executory contract or unexpired lease, the terms of the Plan will govern the assumption or rejection of such executory contract on unexpired lease.

### ***8.3    Payments Related to Assumption of Contracts and Leases***.

(a)     Subject to Section 8.2 above, any Cure Amount related to the assumption or assumption and assignment of any executory contract or unexpired lease pursuant to this Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Amount in Cash as soon as practicable after assumption and/or assignment thereof, or on such other terms as the parties to such executory contracts or unexpired leases and the Debtors may otherwise agree. For the avoidance of doubt, payment of Cure Amounts arising from the assumption or assumption and assignment of executory contracts or unexpired leases in connection with the WholeCo Sale Transaction shall be governed by the WholeCo Sale Order.

(b)     Assumption or assumption and assignment of any executory contract or unexpired lease pursuant to this Plan or otherwise and payment of the Cure Amount shall result in the full release and satisfaction of any Claims against any Debtor or defaults by any Debtor, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time before the date that the Debtors assume or assume and assign such executory contract or unexpired lease. Any proofs of claim filed with respect to an executory contract or unexpired lease that has been assumed or assumed and assigned shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

### 8.4     *Rejection Damages Claims*.

Except as set forth in any other applicable order of the Bankruptcy Court, in the event that the rejection of an executory contract or unexpired lease hereunder results in damages to the other party or parties to such executory contract or unexpired lease, unless such party or parties file a proof of claim for any Claim for such damages with the Bankruptcy Court and served upon counsel for the Debtors or the Plan Administrator, as applicable, by the later of 30 days after (i) the Effective Date and (ii) the effective date of rejection of such contract or lease, such Claim shall be forever barred and shall not be enforceable against the Debtors, their respective Estates, Wind Down Co, or the Post-Effective Date Debtors, as applicable, or their respective properties or interests in property. Any such Claims, to the extent Allowed, shall be classified as General Unsecured Claims.

### 8.5     *Survival of Certain of the Debtors' Indemnification Obligations*.

(a)     The Debtors, Wind Down Co, and the Post-Effective Date Debtors, as applicable, shall honor any Indemnification Obligations in place immediately prior to the Effective Date (whether in by-laws, board resolutions, corporate charters (or other equivalent governing documents), indemnification agreements, or employment contracts) solely for the Covered Persons to the extent not assumed by the Successful Bidder; *provided that* Wind Down Co and the Post-Effective Date Debtors shall not indemnify the Covered Persons for any Claim or Causes of Action that is not an indemnifiable claim pursuant to such Indemnification Obligation. Unless otherwise agreed in writing by the Debtors and the Requisite Prepetition Lenders (which may be by email through counsel), all obligations under this Section 8.5(a) shall be limited solely to recovery available under applicable D&O Policies and neither the Debtors, Wind Down Co, the Post-Effective Debtors, nor any of their assets (other than D&O Policies) shall be liable for any such obligations. For the avoidance of doubt, nothing herein shall be construed as the Debtors assuming any obligation with respect to any self-insured retention for which the applicable insurer has the ability to assert a prepetition Claim against the applicable Debtor in accordance with the order setting the Claims Bar Date or other order of the Court.

(b)     In addition, after the Effective Date, Wind Down Co and the Post-Effective Date Debtors shall not, purely with respect to any Covered Person, terminate or otherwise reduce the coverage under any current and former D&O Policy (including any "tail policy") in effect as of the Petition Date, and Covered Persons shall be entitled to the full benefits of any such D&O Policy for the full term of such D&O Policy regardless of whether such Covered Persons remain in their respective positions after the Effective Date to the extent set forth in such D&O Policies. For the avoidance of doubt, the Debtors, Wind Down Co, and the Post-Effective Date Debtors shall not, without the consent of the Requisite Prepetition Lenders, acquire new D&O Policies or extend any existing D&O Policies.

(c)     Subject to the occurrence of the Effective Date, the obligations of each Debtor to indemnify, defend, reimburse, or limit the liability of any Released Parties against any Claims or Causes of Action, as provided in the Debtors' articles of organization, certificates of incorporation, bylaws, other

organizational documents, or applicable law, shall survive confirmation of this Plan, and shall be assumed by such Debtor and assigned to Wind Down Co solely to the extent necessary to recover and have access to insurance proceeds. Indemnification claims arising out of prepetition conduct shall be treated as General Unsecured Claims against the Debtors to the extent Allowed. Indemnification claims arising out of postpetition conduct shall be treated as Administrative Expense Claims against the Debtors to the extent Allowed.

### 8.6     *Insurance Policies*.

To the extent not assumed by the Successful Bidder in connection with the WholeCo Sale Transaction, all insurance policies to which any Debtor is a beneficiary as of the Effective Date shall be deemed to be and treated as executory contracts, and shall be assumed by the applicable Debtor, and shall continue in full force and effect thereafter in accordance with their respective terms and vest in the Post-Effective Date Debtors, subject to the consent of the Requisite Prepetition Lenders.

### 8.7     *Modifications, Amendments, Supplements, Restatements, or Other Agreements*.

Unless otherwise provided herein or by separate order of the Bankruptcy Court, each executory contract and unexpired lease that is assumed or assumed and assigned shall include any and all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instruments, or other document is listed in any notices of assumed contracts.

### 8.8     *Reservation of Rights*.

(a)     Neither the exclusion nor the inclusion by the Debtors of any contract or lease on any exhibit, schedule, or other annex to this Plan or in the Plan Supplement, nor anything contained in this Plan, shall constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors, Wind Down Co, or the Post-Effective Date Debtors, as applicable, or their respective affiliates has any liability thereunder.

(b)     Except as explicitly provided in this Plan, nothing in this Plan shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, claims, Causes of Action, or other rights of the Debtors, Wind Down Co, or the Post-Effective Date Debtors, as applicable, under any executory or non-executory contract or unexpired or expired lease.

(c)     Nothing in this Plan shall increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtors, Wind Down Co, or the Post-Effective Date Debtors, as applicable, under any executory or non-executory contract or unexpired or expired lease.

(d)     If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of its assumption under this Plan, the Debtors or the Plan Administrator, as applicable, shall have 30 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

**8.9** ***Purchaser Assumed Claims; WholeCo Sale Order; Assumption and Assignment Procedures***.

(a)     The Successful Bidder may assume certain liabilities of the Debtors as part of the WholeCo Sale Transaction.  Any obligation that was assumed by the Successful Bidder shall cease to be Claims against the Debtors following such assumption.

(b)     Nothing contained in this Plan or the Confirmation Order constitutes or shall be construed as any modification or amendment of the WholeCo Sale Order or any assumption or assignment procedures described therein.

## ARTICLE IX.     CONDITIONS PRECEDENT TO OCCURRENCE OF EFFECTIVE DATE.

**9.1** ***Conditions Precedent to Effective Date***.

The Effective Date shall not occur unless all of the following applicable conditions precedent have been satisfied or waived in accordance with this Plan:

(a)     the Bankruptcy Court shall have entered the Disclosure Statement Order, and such order shall not have been reversed, stayed, amended, modified, dismissed, vacated, or reconsidered;

(b)     the Bankruptcy Court shall have entered the Confirmation Order;

(c)     the Debtors shall have obtained all regulatory approvals necessary to implement and effectuate this Plan;

(d)     the final version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been filed in a manner consistent with the Plan;

(e)     the Debtors shall not be in default under the DIP Credit Agreement or the DIP Order, which default has not been waived pursuant to the DIP Credit Agreement or cured by the Debtors, in each case, in a manner consistent with the DIP Credit Agreement and/or DIP Order;

(f)     the Bankruptcy Court shall have entered the WholeCo Sale Order and such entered order shall be a Final Order;

(g)     the WholeCo Sale Transactions shall have been consummated;

(h)     Wind Down Co shall have been formed;

(i)     the Wind Down Fund shall have been fully funded;

(j)     all documents, certificates, and agreements necessary to implement the Plan on the Effective Date (including any documents contained in the Plan Supplement) shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable governmental units, in accordance with applicable laws;

(k)     the Fee Escrow Account shall be fully funded;

(l)     the Debtors shall have paid, caused to be paid, or funded into escrow for payment all Restructuring Expenses, including those fees and expenses estimated to be incurred through and following the Effective Date, as applicable; and

(m)      the Debtors shall have implemented (or will implement immediately upon the occurrence of the Effective Date) all transactions contemplated in this Plan in a manner consistent with this Plan.

### 9.2      *Waiver of Conditions Precedent*.

(a)      Each of the conditions precedent to the occurrence of the Effective Date may be waived in writing by the Debtors and the Requisite Prepetition Lenders, without leave of or order of the Bankruptcy Court.  If any such condition precedent is waived pursuant to this Section 9.2 and the Effective Date occurs, each party agreeing to waive such condition precedent shall be estopped from withdrawing such waiver after the Effective Date or otherwise challenging the occurrence of the Effective Date on the basis that such condition was not satisfied, the waiver of such condition precedent shall benefit from the "equitable mootness" doctrine, and the occurrence of the Effective Date shall foreclose any ability to challenge this Plan in any court.  If this Plan is confirmed for fewer than all of the Debtors, only the conditions applicable to the Debtor or Debtors for which this Plan is confirmed must be satisfied or waived for the Effective Date to occur.  For the avoidance of doubt, the waiver of one or more conditions precedent to the occurrence of the Effective Date shall not limit the ability of any party in interest, including the Requisite Prepetition Lenders, to challenge the occurrence of the Effective Date for any other reason.

(b)      Except as otherwise provided herein, all actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

### 9.3      *Effect of Failure of a Condition*.

If the Effective Date does not occur, this Plan shall be null and void in all respects and nothing contained in this Plan or the Disclosure Statement shall (i) constitute a waiver or release of any Claims by or against or any Interests in the Debtors, (ii) prejudice in any manner the rights of any Person, or (iii) constitute an admission, acknowledgement, offer, or undertaking by the Debtors or any other Person.

### 9.4      *Substantial Consummation*.

"Substantial Consummation" of the Plan, as defined in section 1101(2), shall be deemed to occur on the Effective Date.

## ARTICLE X.      EFFECT OF CONFIRMATION.

### 10.1      *Binding Effect*.

Subject to the occurrence of the Effective Date, on and after the entry of the Confirmation Order, the provisions of this Plan shall bind all parties in interest, including every holder of a Claim against or Interest in any Debtor, and inure to the benefit of and be binding on such holder's respective successors and assigns, regardless of whether the Claim or Interest of such holder is Impaired under this Plan and whether such holder has accepted this Plan.

### 10.2      *Vesting of Assets*.

Except as otherwise provided in this Plan (including in all respects Sections 10.6, 10.7, and 10.8), the Plan Supplement (including the Plan Transactions Exhibit), or the Confirmation Order, on and after the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all Assets of the Estates, including all claims, rights, and Causes of Action, and any property acquired by the Debtors under or in connection with this Plan or the Plan Supplement, shall, in accordance with the Plan Transactions Exhibit,

vest in Wind Down Co or in the applicable Post-Effective Date Debtor, as applicable, free and clear of all Claims, Liens, encumbrances, charges, and other interests.  Subject to the terms of this Plan, on and after the Effective Date, the Plan Administrator may operate the Debtors' businesses and may use, acquire, and dispose of property and prosecute, compromise, or settle any Claims (including any Administrative Expense Claims), Interests, and Causes of Action without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules other than restrictions expressly imposed by this Plan or the Confirmation Order.  Without limiting the foregoing, the Plan Administrator may pay the charges that it incurs on behalf of the Post-Effective Date Debtors, Wind Down Co or any other Entity to be established or formed pursuant to the Plan Transactions Exhibit after the Effective Date for Professional Persons' fees, disbursements, expenses, or related support services without application to the Bankruptcy Court.

On the Effective Date, all remaining property of the Debtors' Estates shall vest in Wind Down Co or the applicable Post-Effective Date Debtor, as applicable, free and clear of all Claims, Liens, encumbrances, charges, and other interests, after giving effect to the Plan Distributions to be made on the Effective Date under the Plan, and except as provided pursuant to the Plan, the Confirmation Order, the Plan Transactions Exhibit, and the WholeCo Purchase Agreement free and clear of all Claims, Interests, Liens, other encumbrances for interests of any kind.

### 10.3    *Pre-Confirmation Injunctions and Stays*.

Unless otherwise provided in this Plan or a Final Order of the Bankruptcy Court, all injunctions and stays arising under or entered during the Chapter 11 Cases, whether under sections 105 or 362 of the Bankruptcy Code or otherwise, and in existence on the date of entry of the Confirmation Order, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

### 10.4    *Injunction Against Interference With Plan*.

Except as otherwise provided in this Plan or the Confirmation Order, upon the entry of the Confirmation Order, all holders of Claims and Interests and all other parties in interest, along with their respective present and former Affiliates, employees, agents, officers, directors, and principals, shall be enjoined from taking any action to interfere with the implementation or the occurrence of the Effective Date; *provided* that nothing contained in this Section 10.4 shall (i) preclude the Prepetition Lenders and the DIP Lenders from exercising their respective rights and remedies pursuant to the DIP Order, as applicable, or (ii) preclude the Prepetition Lenders from contesting whether a condition to the occurrence of the Effective Date has been satisfied.

### 10.5    *Plan Injunction*.

(a)       Except as otherwise provided in this Plan or the Confirmation Order, from and after the Effective Date, and solely with respect to the Debtors, until the Debtors no longer have any assets, subject to further extension or reduction by motion on notice, with all parties' rights with respect to such extension or reduction reserved, all Persons who have held, hold, or may hold Claims or Interests, and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, are, with respect to any such Claim or Interest, permanently enjoined from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, any of the Debtors, the Estates, Wind Down Co, the Post-Effective Date Debtors, the Plan Administrator, or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this

subsection (i), or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against any of the Debtors, the Estates, Wind Down Co, the Post-Effective Date Debtors, the Plan Administrator, or their property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii), or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against any of the Debtors, the Estates, Wind Down Co, the Post-Effective Date Debtors, the Plan Administrator, or any of their property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii), or any property of any such transferee or successor; (iv) asserting any right of setoff, directly or indirectly, against any obligation due from any of the Debtors, the Estates, Wind Down Co, the Post-Effective Date Debtors, the Plan Administrator, or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (iv), or any property of any such transferee or successor, except (1) as contemplated by this Plan or (2) to the extent asserted in a timely filed proof of Claim or timely filed objection to the confirmation of this Plan; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan; *provided* that nothing contained in this Plan shall preclude such Persons who have held, hold, or may hold Claims against, or Interests in, any of the Debtors, the Estates, Wind Down Co, the Post-Effective Date Debtors, or the Plan Administrator from exercising their respective rights and remedies, or obtaining benefits, pursuant to and consistent with the terms of this Plan.

(b)     Subject in all respects to Section 11.1 of this Plan, no Entity may commence or pursue a Claim or Cause of Action of any kind against any Released Party or Exculpated Party that arose or arises from, in whole or in part:  the Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; Wind Down Co; the Post-Effective Date Debtors; the Plan Administrator; the Chapter 11 Cases (including the filing and administration thereof); the Wind Down; the Plan; the Disclosure Statement; the DIP Order; the WholeCo Sale Process, the WholeCo Sale Transaction, or the WholeCo Sale Documents; the negotiation, formulation, preparation, dissemination, or consummation of the Definitive Documents or any other contract, instrument, release, or document created or entered into in connection with this Plan (including the Plan Supplement) or any of the other Definitive Documents; any other debt or Security of the Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or Security of the Debtors; the subject matter of, or the transactions or events giving rise to any Claim or Interest that is treated in this Plan; the business or contractual or other arrangements or other interactions between any Releasing Party and any Released Party or Exculpated Party; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the Debtors; any intercompany obligations, transactions, or transfers; the formulation, preparation, negotiation, dissemination, solicitation, filing, confirmation, and consummation of this Plan (including the Plan Supplement); the funding of this Plan; the administration and implementation of this Plan or Confirmation Order, including the distribution of property under this Plan; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Effective Date related or relating to the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable claim that has not, with respect to a Released Party, been released under this Plan or, with respect to an Exculpated Party, been exculpated under this Plan and (ii) specifically authorizing such Entity to bring such Claim or Cause of Action against any such Released Party or Exculpated Party. The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and has not been released or exculpated (as applicable) and, only to the extent legally permissible and as provided for in Section 11.1 of this Plan, shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.

(c)      By accepting Plan Distributions pursuant to this Plan, each holder of an Allowed Claim or Interest shall be deemed to have affirmatively and specifically consented to be bound by this Plan, including the injunctions set forth in this Section 10.5 of the Plan and all transactions, documents, and agreements contemplated hereunder that govern the property that is the subject of such distributions.

*10.6*      *Releases*.

(a)      **Release by Debtors**.  **As of the Effective Date, except for the rights and remedies that remain in effect from and after the Effective Date to enforce this Plan and the obligations contemplated by the Definitive Documents and the documents in the Plan Supplement, or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released, by and on behalf of the Debtors, Wind Down Co, the Post-Effective Date Debtors, the Plan Administrator, and the Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, from any and all Claims and Causes of Action (including any derivative claims, asserted or assertable on behalf of the Debtors, Wind Down Co, the Post-Effective Date Debtors, the Plan Administrator, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort, or otherwise, by statute, violations of federal or state securities laws, or otherwise that the Debtors, Wind Down Co, the Post-Effective Date Debtors, the Plan Administrator, the Estates, or any of their respective affiliates would have been legally entitled to assert in their own right (whether individually or collectively), or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any security of or Claim against the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, execution, filing, and/or consummation of this Plan, the DIP Loan Documents, the Disclosure Statement, the WholeCo Sale Process, the WholeCo Sale Transaction, the WholeCo Sale Documents, the Definitive Documents, and the documents in the Plan Supplement or related agreements, instruments, or other documents relating thereto, or the solicitation of votes with respect to the Plan, in all cases, based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any post-Effective Date obligations of any party or entity under this Plan, any transaction hereunder, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan, (ii) any post-Effective Date actions or conduct (but not any actions or conduct on or prior to the Effective Date), or (iii) any Person from any claim related to an act or omission constituting actual fraud, willful misconduct, or gross negligence, as determined by a Final Order.  Any Persons formed pursuant to the Plan shall be bound, to the same extent the Debtors, Wind Down Co, the Post-Effective Date Debtors, the Plan Administrator, and the Estates are bound, by the releases set forth in this Section 10.6(a) of the Plan.**

(b)      **Releases by Holders of Claims or Interests**.  **As of the Effective Date, except for the rights and remedies that remain in effect from and after the Effective Date to enforce this Plan and the obligations contemplated by the Definitive Documents and the documents in the Plan Supplement, or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released, by and on behalf of the Releasing Parties, in each case on behalf of**

themselves and their respective successors, assigns, and representatives, and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, from any and all Claims and Causes of Action (including any derivative claims, asserted or assertable on behalf of the Debtors, Wind Down Co, the Post-Effective Date Debtors, the Plan Administrator, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort, or otherwise, by statute, violations of federal or state securities laws, or otherwise that the Debtors, Wind Down Co, the Post-Effective Date Debtors, the Plan Administrator, the Estates, or any of their respective affiliates would have been legally entitled to assert in their own right (whether individually or collectively), or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any security of or Claim against the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, execution, filing, and/or consummation of this Plan, the DIP Loan Documents, the Disclosure Statement, the WholeCo Sale Process, the WholeCo Sale Transaction, the WholeCo Sale Documents, the Definitive Documents, and the documents in the Plan Supplement, or related agreements, instruments, or other documents relating thereto, or the solicitation of votes with respect to the Plan, in all cases, based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any post-Effective Date obligations of any party or entity under this Plan, any transaction hereunder, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan, (ii) any post-Effective Date actions or conduct (but not any actions or conduct on or prior to the Effective Date), or (iii) any Person from any claim related to an act or omission constituting actual fraud, willful misconduct, or gross negligence, as determined by a Final Order.

     *10.7*   *Exculpation*.

     To the fullest extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party will be released and exculpated from, any Claim or Cause of Action for any act or omission occurring on or after the Petition Date and prior to or on the Effective Date related to, in connection with, or arising out of the administration of the Chapter 11 Cases; the negotiation, formulation, preparation, execution, filing, and/or consummation of the WholeCo Sale Process, the WholeCo Sale Documents, the Disclosure Statement, the DIP Loan Documents, the WholeCo Sale Transaction, and this Plan (including the Definitive Documents and the documents in the Plan Supplement); the solicitation of votes for, or confirmation of, this Plan; the funding of this Plan and the transactions contemplated thereby; the Confirmation Order; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; or the transactions in furtherance of any of the foregoing; other than Claims or Causes of Action arising out of or related to any act or omission of an Exculpated Party that is determined by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, as determined by a Final Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan. The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of securities pursuant to the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan. The exculpation under this **Section 10.7** will be in

**addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.  Notwithstanding anything to the contrary in the foregoing, the exculpation set forth in this <u>Section 10.7</u> of the Plan shall not be construed as exculpating any party or Entity from its post-Effective Date obligations under this Plan, any transaction hereunder, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan.**

       *10.8*     *<u>Injunction Related to Releases and Exculpation</u>*.

Upon the occurrence of the Effective Date, the Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to this Plan, including the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in this Plan or the Confirmation Order.

       *10.9*     *<u>Subordinated Claims</u>*.

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective Plan Distributions and treatments thereof under this Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, sections 509(c), 510(a), 510(b), or 510(c) of the Bankruptcy Code, or otherwise.  The Debtors, and Plan Administrator, as applicable, reserve the right, subject to the entry of an order by the Bankruptcy Court (or court of competent jurisdiction), to reclassify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

       *10.10*    *<u>Retention of Causes of Action and Reservation of Rights</u>*.

Except as otherwise provided in this Plan, including <u>Sections 10.4</u>, <u>10.5</u>, <u>10.6</u>, <u>10.7</u> and <u>10.8</u>, nothing contained in this Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights, claims, Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that the Debtors had immediately prior to the Effective Date on behalf of the Estates or of themselves in accordance with any provision of the Bankruptcy Code or any applicable nonbankruptcy law.  The Plan Administrator, as applicable, shall have, retain, reserve, and be entitled to assert all such claims, Causes of Action, rights of setoff or recoupment, and other legal or equitable defenses as fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and equitable rights in respect of any Unimpaired Claim may be asserted after the Confirmation Date and Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.  Notwithstanding anything herein to the contrary, the Plan Administrator shall not have, retain, reserve, or be entitled to assert any right, Claim, or Cause of Action that is to be transferred or assigned to the Successful Bidder under the terms of the WholeCo Sale Documents.

       *10.11*    *<u>Ipso Facto and Similar Provisions Ineffective</u>*.

Any term of any prepetition policy, prepetition contract, or other prepetition obligation applicable to a Debtor shall be void and of no further force or effect with respect to any Debtor to the extent that such policy, contract, or other obligation is conditioned on, creates an obligation of the Debtor as a result of, or gives rise to a right of any entity based on any of the following:  (i) the insolvency or financial condition of a Debtor; (ii) the commencement of the Chapter 11 Cases; (iii) the confirmation or consummation of this

Plan, including any change of control that shall occur as a result of such consummation; or (iv) the restructuring of Claims and Interests hereunder.

## ARTICLE XI.  RETENTION OF JURISDICTION.

### 11.1  *Retention of Jurisdiction*.

Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction, pursuant to 28 U.S.C. §§ 1334 and 157, over all matters arising in or related to the Chapter 11 Cases for, among other things, the following purposes:

(a)  to hear and determine motions and/or applications for the assumption or rejection of executory contracts or unexpired leases and any disputes over Cure Amounts resulting therefrom;

(b)  to determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the entry of the Confirmation Order;

(c)  to hear and resolve any disputes arising from or related to (i) any orders of the Bankruptcy Court granting relief under Bankruptcy Rule 2004 or (ii) any protective orders entered by the Bankruptcy Court in connection with the foregoing;

(d)  to ensure that Plan Distributions to holders of Allowed Claims are accomplished as provided in this Plan and the Confirmation Order, and to adjudicate any and all disputes arising from or relating to Plan Distributions under this Plan;

(e)  to consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim, including any Administrative Expense Claim;

(f)  to enter, implement, or enforce such orders as may be appropriate in the event that the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(g)  to issue and enforce injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person or other Entity with the consummation, implementation, or enforcement of this Plan, the Confirmation Order, or any other order of the Bankruptcy Court, including the WholeCo Sale Order;

(h)  to hear and determine any application to modify this Plan in accordance with section 1127 of the Bankruptcy Code to remedy any defect or omission or reconcile any inconsistency in this Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(i)  to hear and determine all Fee Claims;

(j)  to resolve disputes concerning any reserves with respect to Disputed Claims or the administration thereof;

(k)  to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan, the Confirmation Order, any transactions or payments in furtherance of either, or any agreement, instrument, or other document governing or related to any of the foregoing;

(l)　to take any action and issue such orders, including any such action or orders as may be necessary after entry of the Confirmation Order or the occurrence of the Effective Date, including, for the avoidance of doubt, relating to the Wind Down (if applicable), as may be necessary to construe, enforce, implement, execute, and consummate this Plan, including any release, exculpation, or injunction provisions set forth in this Plan, following the occurrence of the Effective Date;

(m)　to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(n)　to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

(o)　to hear and determine any other matters related to the Chapter 11 Cases and not inconsistent with the Bankruptcy Code or title 28 of the United States Code;

(p)　to resolve any disputes concerning whether a Person or entity had sufficient notice of the Chapter 11 Cases, the Disclosure Statement, any Solicitation conducted in connection with the Chapter 11 Cases, any bar date established in the Chapter 11 Cases, or any deadline for responding or objecting to a Cure Amount, in each case, for the purpose for determining whether a Claim or Interest is released or cancelled hereunder or for any other purpose;

(q)　to hear, adjudicate, decide, or resolve any and all matters related to Article X of this Plan, including the releases, exculpations, and injunctions issued thereunder;

(r)　to hear and determine any rights, Claims, or Causes of Action held by or accruing to the Debtors pursuant to the Bankruptcy Code or pursuant to any federal statute or legal theory;

(s)　to hear, adjudicate, decide, or resolve any and all matters related to recovery of any Assets of the Debtors and property of the Estates, wherever located; and

(t)　to enter a final decree closing each of the Chapter 11 Cases.

(u)　For the avoidance of doubt, nothing contained in this Section 11.1 of the Plan shall expand the exclusive jurisdiction of the Bankruptcy Court beyond that provided by applicable law.

## ARTICLE XII.　MISCELLANEOUS PROVISIONS.

### 12.1　*Statutory Fees*.

All Statutory Fees that are due and payable for each Debtor's Chapter 11 Case shall be paid by the Debtors on the Effective Date.  After the Effective Date, the Debtors, Wind Down Co, and the Post-Effective Date Debtors shall be jointly and severally liable to pay any and all Statutory Fees when due and payable.  The Debtors shall file all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR.  After the Effective Date, the Debtors, Wind Down Co, and the Post-Effective Date Debtors shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due.  Notwithstanding anything called for in the Plan to the contrary, the Debtors, Wind Down Co, and the Post-Effective Date Debtors shall remain obligated to pay Statutory Fees to the U.S. Trustee and make such reports until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.  The U.S. Trustee shall not be required to file any Administrative Expense Claim in these cases and shall not be treated as providing any release under the

Plan.  The obligations under this <u>Section 12.1</u> of the Plan shall remain for each Debtor until such time as a final decree is entered closing the Chapter 11 Case for such Debtor, a Final Order converting such Debtor's Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code is entered, or a Final Order dismissing such Debtor's Chapter 11 Case is entered.

### 12.2    *Exemption from Certain Transfer Taxes*.

Pursuant to and to the fullest extent permitted by section 1146 of the Bankruptcy Code, (i) the issuance, transfer, or exchange of any securities, instruments, or documents, or any property under the Plan, (ii) the creation of any Lien, mortgage, deed of trust, or other security interest, (iii) all sale transactions approved by the Bankruptcy Court, and consummated by the Debtors on and after the Confirmation Date, including any transfers under this Plan, including pursuant to the WholeCo Sale Transaction, (iv) any assumption, assignment, or sale by the Debtors of their interests in unexpired leases of nonresidential real property or executory contracts pursuant to section 365(a) of the Bankruptcy Code, and (v) the issuance, renewal, modification, or securing of indebtedness by such means, and the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, including the Confirmation Order, shall not be subject to any document recording tax, stamp tax, conveyance fee, or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, sales tax, use tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfer of property without payment of any such tax, recordation fee, or governmental assessment. Consistent with the foregoing, each recorder of deeds or similar official for any county, city, or Governmental Unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument without requiring the payment of any filing fees, documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax, or similar tax.

### 12.3    *Request for Expedited Determination of Taxes*.

The Debtors shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date.

### 12.4    *Dates of Actions to Implement Plan*.

In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day but shall be deemed to have been completed as of the required date.

### 12.5    *Amendments*.

(a)    **Plan Modifications**.  This Plan, subject to the consent of the Requisite Prepetition Lenders, may be amended, supplemented, or otherwise modified in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as otherwise ordered by the Bankruptcy Court.  In addition, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Allowed Claims pursuant to this Plan, the Debtors may, subject to the consent of the Requisite Prepetition Lenders, remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes of effects of this Plan, and

any holder of a Claim or Interest that has accepted this Plan shall be deemed to have accepted this Plan as amended, modified, or supplemented. The Debtors, with the consent of the Requisite Prepetition Lenders, shall have the right to amend the documents contained in, and exhibits to, the Plan Supplement in accordance with the terms of this Plan through the Effective Date.

(b)     **Certain Technical Amendments**.  Prior to the Effective Date, the Debtors may, subject to the consent of the Requisite Prepetition Lenders, make appropriate technical adjustments and modifications to this Plan without further order or approval of the Bankruptcy Court.

### 12.6    *Revocation or Withdrawal of Plan*.

The Debtors reserve the right to revoke or withdraw this Plan prior to the Effective Date as to any or all of the Debtors.  If, with respect to a Debtor, this Plan has been revoked or withdrawn prior to the Effective Date, or if confirmation or the occurrence of the Effective Date as to such Debtor does not occur, then, with respect to such Debtor:  (i) this Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount any Claim or Interest or Class of Claims or Interests), assumption or rejection of executory contracts or unexpired leases affected by this Plan, and any document or agreement executed pursuant to this Plan shall be deemed null and void; and (iii) nothing contained in this Plan shall (a) constitute a waiver or release of any Claim by or against, or any Interest in, such Debtor or any other Person; (b) prejudice in any manner the rights of such Debtor or any other Person; or (c) constitute an admission of any sort by any Debtor or any other Person.

### 12.7    *Severability*.

If, prior to the entry of the Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation by the Bankruptcy Court, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with this Section 12.7, is (i) valid and enforceable pursuant to its terms, (ii) integral to this Plan and may not be deleted or modified without the consent of the Debtors and (iii) nonseverable and mutually dependent.

### 12.8    *Governing Law*.

Except to the extent that the Bankruptcy Code or other federal law is applicable or to the extent that a Plan Supplement document provides otherwise, the rights, duties, and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of New York, without giving effect to the principles of conflicts of laws thereof (other than section 5-1401 and section 5-1402 of the New York General Obligations Law).

### 12.9    *Immediate Binding Effect*.

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of this Plan shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the holders of Claims and Interests, the Released Parties, and each of their respective successors and assigns.

### 12.10   *Successors and Assigns*.

The rights, benefits, and obligations of any Person named or referred to in this Plan shall be binding on and shall inure to the benefit of any heir, executor, administrator, successor, or permitted assign, if any, of each such Person.

### 12.11   *Entire Agreement*.

On the Effective Date, this Plan, the Plan Supplement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

### 12.12   *Computing Time*.

In computing any period of time prescribed or allowed by this Plan, unless otherwise set forth in this Plan or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

### 12.13   *Exhibits to Plan*.

All exhibits, schedules, supplements, and appendices to this Plan (including any other documents to be executed, delivered, assumed, or performed in connection with the occurrence of the Effective Date) are incorporated into and are a part of this Plan as if set forth in full in this Plan.

### 12.14   *Notices*.

All notices, requests, and demands hereunder shall be in writing (including by facsimile or email transmission) and, unless otherwise provided herein, shall be deemed to have been duly given or made only when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

(i)      If to the Debtors, to:

Everstream Solutions LLC
1228 Euclid Avenue, Suite 250
Cleveland, OH 44115
Attention:     Bill Hunt
                       (bhunt@everstream.net)

With a copy to:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Attention:     Matt S. Barr
                       (matt.barr@weil.com)
                       Andriana Georgallas
                       (andriana.georgallas@weil.com)
                       Alexander P. Cohen
                       (alexander.cohen@weil.com)

*Attorneys for Debtors and Debtors in Possession*

57

(ii)      If to the Prepetition Lenders, the DIP Lenders, or the DIP Agent, to:

Paul Hastings LLP
200 Park Ave
New York, NY 10166
Attention:  Jayme Goldstein
         (jaymegoldstein@paulhastings.com)
         Jeremy Evans
         (jeremyevans@paulhastings.com)
         Charles Persons
         (charlespersons@paulhastings.com)

*Counsel to the Prepetition Lenders, the DIP Lenders, and the DIP Agent*


(iii)     If to the HoldCo Agent, to:

Norton Rose Fulbright US LLP
1301 Avenue of the Americas
New York, NY 10019
Attention:     Stephen Castro
         (stephen.castro@nortonrosefulbright.com)

*Counsel to the HoldCo Agent*


(iv)      If to the Sponsor, to:

Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022
Attention:     Christopher Marcus, P.C.
         (christopher.marcus@kirkland.com)
         Emily E. Geier, P.C.
         (emily.geier@kirkland.com)
         Aaron Metviner
         (aaron.metviner@kirkland.com)

*Counsel to the Sponsor*


(v)       If to Bluebird, to:

Kirkland & Ellis LLP
609 Main Street
Houston, TX 77002

-and-

601 Lexington Avenue
New York, NY 10022
Attention:      John Pitts, P.C.
                (john.pitts@kirkland.com)
                Ben Hardison
                (ben.hardison@kirkland.com)
                Nicole Greenblatt, P.C.
                (nicole.greenblatt@kirkland.com)


*Counsel to Bluebird*

(vi)      If to the Creditors' Committee, to:

McDermott Will & Schulte LLP
One Vanderbilt Avenue
New York, NY 10017


Attention:      Charles Gibbs
                (crgibbs@mwe.com)
                Kristin Going
                (kgoing@mwe.com)
                Darren Azman
                (dazman@mwe.com)
                Robert Ethan Dover
                (edover@mwe.com)
                Joshua C. Lee
                (jclee@mwe.com)
                Gregg Steinman
                (gsteinman@mwe.com)


*Counsel to the Creditors' Committee*

A notice is deemed to be given and received (i) if sent by first-class mail, personal delivery, or courier, on the date of delivery if it is a Business Day and the delivery if was made prior to 4:00 p.m. (local time in place of receipt) and otherwise on the next Business Day, or (ii) if sent by electronic mail, when the sender receives an email from the recipient acknowledging receipt; *provided* that an automatic "read receipt" does not constitute acknowledgment of an email for purposes of this <u>Section 12.14</u>.  Any party may change its address for service from time to time by providing a notice in accordance with the foregoing. Any element of a party's address that is not specifically changed in a notice will be assumed not to be changed.

After the occurrence of the Effective Date, the Plan Administrator has authority to send a notice to entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, such entities must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002; *provided* that the U.S. Trustee need not file such a renewed request and shall continue to receive documents without any further action being necessary.  After the occurrence of the Effective Date, Wind Down Co and the Post-Effective Date Debtors are authorized to limit the list of entities receiving documents pursuant to Bankruptcy Rule 2002

to the U.S. Trustee, those entities that have filed such renewed requests and those entities affected by the relief sought.

### 12.15    *Reservation of Rights*.

Except as otherwise provided herein, this Plan shall be of no force or effect unless the Bankruptcy Court enters the Confirmation Order.  None of the filing of this Plan, any statement or provision of this Plan, or the taking of any action by the Debtors with respect to this Plan shall be or shall be deemed to be an admission or waiver of any rights of (i) the Debtors with respect to any Claims or Interests prior to the Effective Date or (ii) any holder of a Claim or Interest or other entity prior to the Effective Date.

### 12.16    *Rights of the Successful Bidder Under the WholeCo Sale Order*.

Nothing contained in the Plan or the Confirmation Order constitutes or shall be construed as any modification or amendment of the rights of the Successful Bidder under the WholeCo Sale Order.

### 12.17    *Waiver or Estoppel*.

Each holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured, or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers filed with the Bankruptcy Court prior to the Confirmation Date.

### 12.18    *Dissolution of Creditors' Committee*.

On the Effective Date, the Creditors' Committee shall be deemed to have been dissolved, and the members thereof, and their respective counsel, advisors and agents, shall be released and discharged of and from all further authority, duties, responsibilities, and obligations related to and arising from and in connection with the Chapter 11 Cases.

Dated:  November 17, 2025
       Cleveland, Ohio

                        Respectfully submitted,

                        */s/ Ken Fitzpatrick*
                        Name:  Ken Fitzpatrick
                        Title:  President and Chief Executive Officer

                        on behalf of

                        Midwest Fiber Holdings LP
                        Midwest Fiber Acquisition Topco LLC
                        Midwest Fiber Acquisition Midco1 LLC
                        Midwest Fiber Acquisition LLC
                        Everstream Solutions LLC
                        Everstream Networks LLC
                        Everstream GLC Holding Company, LLC
                        American Fiber Comm L.L.C.
                        HRS Internet LLC
                        Lynx Network Group, Inc.
                        15955 State Street LLC
                        Rocket Fiber LLC
                        Lynx Fiber One, LLC
                        Lynx Fiber Two, LLC